## CHARLES GOLDSBOROUGH *vs.* J. C. TURNER and J. CALDER TURNER.

In an action to set aside a deed for fraud, a Judge may, by section 225 of C. C. P., try such issues of fact as are made by the pleading. He may also submit to a jury issues so framed as to present any question of fact on which he doubts, but he is not bound by their verdict, and may proceed to find the facts otherwise than they have found ; and he may also find facts not embraced in the issues submitted to them.

An authority given to an attorney or agent, to accept in payment of a debt cash in New York or Baltimore funds, does not extend to accepting the bill of an insolvent drawer, no matter upon whom it may be drawn. The credit of a bill is not enhanced by the credit of the drawee until acceptance.

The defence, of a purchaser "for value and without notice," can only be made available by one who has acquired the legal estate. Therefore, where land was conveyed in trust, and a person purchased from the trustor his equitable estate, and paid the value thereof, and afterwards acquired the legal estate without paying the value of the same ; *it was held,* that neither by the purchase of the equity of redemption for value, nor of the legal estate without value, could he be held a purchaser for value and without notice, within the sense of the rule.

CIVIL ACTION to set aside a deed, tried before *Cloud, J.,* at Fall Term, 1872, of ROWAN Superior Court.

The complaint alleged that the defendant, James C. Turner, was the owner of a house and lot in Salisbury ; that he was indebted for the purchase money, some $1,500, and that he was also indebted to Goldsborough and Tate in three notes of $1,000 each, with interest due thereon ; that in order to secure these debts he executed a deed in trust to the plaintiff, with a proviso that if the debts were not paid on the 4th July, 1867, the trustee should sell, &c., &c ; that a thousand dollars was paid in June 1867 ; that the remainder was not paid on the 4th of July, as stipulated in the deed ; that, after postponing from time to time, the plaintiff and James C. Turner agreed that if

he would pay $2,300, and the debt due to one Josephi for the purchase money, he, plaintiff, would convey to J. Calder Turner the lot in question; that plaintiff prepared a deed to the said J. Calder Turner, and sent it to his attorneys, Blackmer & McCorkle, to be delivered only on the condition that the sum of $2,300 was paid in cash and the $1,500 secured or arranged, so as to relieve the plaintiff as trustee as aforesaid; that afterwards James C. Turner paid to plaintiff's attorneys $2,000 in cash, and gave them a check on one G. W. Swepson for $300, payable at 90 days, assuring them that the check would be promptly paid, and at the same time the said Turner gave his check to one John I. Shaver, who was his surety on the note given for the purchase money, on the said Swepson for $1,200 at 30 days, in full of the amount due Josephi. That Shaver, confiding in the representation that the check would be paid, agreed that the property should be released from the incumbrance of the said debt. That the holder of the note for $1,500 did not assent to the arrangement, and that there is still due on the same some $1,200. That the said checks were presented to the said Swepson and not accepted. That the said Turner had no funds in his hands and was in fact indebted to Swepson, and the fact was well known to both the defendants. That when these checks were accepted the deed was delivered by plaintiff's attorneys to James C. Turner. Plaintiff further alleges that Turner has not paid the checks drawn by him. That he is insolvent, and that he knew that the terms of compromise were that the deed was not to be delivered until the cash for the $2,300, was paid and the note for the purchase money was arranged. That J. Calder Turner had no funds in Swepson's hands when the checks were drawn. Plaintiff asked for judgment that the deed be delivered up to be cancelled and that the land be sold, &c., and that J. Calder Turner be enjoined from selling, &c.

The defendant J. C. Turner admits giving the checks on Swepson, and that they were not paid. He denies all fraud,

and that he misrepresented the facts to plaintiff's attorneys. He denies that he had any knowledge, or that the contract was, that the deed was not to be delivered until the cash was paid, but that any negotiable securities were to be taken. He alleges that Swepson was at the time a man of large means and prompt in his payments. That he had no funds in the hands of Swepson at the time the checks were drawn, but avers that he had business transactions with him, and had secured his *legal* promise to honor the checks, and that the agents of plaintiff knew he had no funds in the hands of Swepson.

He avers that the condition and financial reputation of Swepson was well known to the attorneys of plaintiff, and to John I. Shaver, and the drafts were accepted in full payment of his indebtedness.

The defendant J. Calder Turner denies any knowledge of the negotiations between plaintiff and his co-defendant, relative to the delivery of the deed upon certain conditions, or anything of the giving or accepting the checks on Swepson. He avers that he purchased the house and lot in question from James C. Turner for the sum of $2,000, which he paid, and which was applied to the payment of the debt due Goldsborough and Tate. Defendant denies that Josephi did not give his assent to the acceptance of the check on Swepson, but avers that he and Goldsborough and Tate, through their legal counsel and agents, accepted the checks in payment of the debts due from James C. Turner.

He denies knowledge of any fraud, deceit or misrepresentations on the part of James C. Tutner or any one else, to obtain the deed from the plaintiff, but on the contrary he says he purchased in good faith, that he paid therefor the sum of $2,000, and that he took the conveyance from the trustee, with the legal assent of the *cestui que trusts*.

After the jury were empanelled, defendants' counsel suggested that Josephi and Goldsborough and Tate were necessary parties, and moved to have them made parties. This motion

was refused. Defendants' counsel thereupon prayed an appeal. The Court ordered plaintiff's counsel to proceed and defendants excepted.

The following issues were then submitted to the jury:

1st. Did the defendant James C. Turner fraudulently procure the delivery of the paper writing purporting to be a deed, as alleged?

2d. Did Blackmer & McCorkle have authority to deliver the paper writing except upon payment of $2,300 in cash?

3d. Did defendants, or either of them, pay $2,300, according to the terms of the compromise with the plaintiff?

4th. Was J. Calder Turner a purchaser of the house and lot described in the pleadings for value, and without knowledge of the facts upon which plaintiff founds his equity?

The evidence relative to the second issue was a letter addressed to Blackmer & McCorkle, as follows:

GENTLEMEN:—" We have written to you by Major Turner authorizing you to settle our claim, which is $2,491.33, for which we have agreed to accept $2,300, Major Turner paying all costs and other charges except your commissions.

*       *       *       *       *       *       *

Please have the matter fixed without delay, and remit us the $2,300 less your commissions. Yours &c.

GOLDSBOROUGH & TATE."

P. S. "Major Turner is to pay cash in Baltimore or New York funds."

There was also evidence that Turner represented to Blackmer & McCorkle, before they took the draft, that he had authority to draw on Swepson, and that his draft would be promptly accepted and paid. It was also in evidence, that Swepson was reputed to be a man of large means, that he lived in this State, and the draft was drawn at 90 days, payable at the Raleigh National Bank, was presented and refused acceptance and returned protested. It was contended that only a portion of the $2,300 was paid in United States currency, and the remainder

in the draft on Swepson. His Honor left it to the jury to say, from all the circumstances, whether Blackmer & McCorkle had authority to accept the draft, and whether it constituted a payment. The defendants contended that, as Swepson was shown to be a man of large means, a draft on him was such funds as was within the terms of the letter.

The jury returned the following verdict in writing:

*To the* 1*st; Answer.*—He did.

*To the* 2*d; Answer.*—They did not.

*To the* 3*d; Answer.*—They did not.

*To the* 4*th; Answer.*—He did not pay full value.

In addition to the foregoing statement, which appears in the record as "Statement for Supreme Court," the Judge rendered the following judgment: "The Court doth declare that the defendant, James C. Turner, on the 4th day of July, 1866, executed to the plaintiff a deed in trust of the premises described in the complaint, to secure the payment of debts due to Goldsborough and Tate, and A. Josephi, and by the terms of said deed in trust, if said debts were not paid and satisfied on or before the 4th day of July, 1867, it became the duty of the plaintiff to sell said premises, and out of the proceeds first pay the expenses of said trust and then said debts ; that on the 4th day of June, 1867, James C. Turner paid to the plaintiff $1,000, in part payment of the debt due to Goldsborough and Tate ; that in the fall of 1869, the said Goldsborough and Tate agreed with said James C. Turner to accept in full satisfaction of their debt the sum of $2,300, if paid in a few days, and the plaintiff was instructed and agreed upon the prompt payment of $2,300 to the attorneys of Goldsborough and Tate, Blackmer & McCorkle, and also the debt due Josephi, to make a deed for the premises to the defendant J. Calder Turner. Accordingly a paper writing, in the form of a deed, was prepared and forwarded, purporting to convey the premises. That James C. Turner was, during the transaction, and is yet, wholly insolvent. The paper writing was afterwards delivered by th

attorneys, Blackmer & McCorkle, to the said James C. Turner. The foregoing facts are declared, as stated in the complaint and not controverted by the answer. The Court doth further declare, as facts found by the jury, that defendants, nor neither of them, paid to said Blackmer & McCorkle the sum of $2,300 at any time, but that only $2,000 was paid.

That Blackmer & McCorkle, at the time of the delivery of the said paper writing, had not received the $2,300, and the same had not been paid by the defendants, or either of them, and that Blackmer & McCorkle had no authority to deliver said paper writing except upon the payment of the sum of $2,300.

That the defendant James C. Turner fraudulently procured the delivery of the paper writing, purporting to be a deed, by false representations.

That J. Calder Turner was not a purchaser for the full value thereof. It is therefore adjudged that the said paper writing was delivered to Blackmer & McCorkle as an escrow; that it was delivered to them upon certain conditions, which have not been complied with, viz: the payment of $2,300.

It is further ordered and adjudged that the said paper writing be delivered up, by the said J. Calder Turner, for cancellation, and that said Turner execute to the plaintiff a quit-claim deed for the premies, and that the said premises be sold according to the terms of the deed in trust, and that the expenses of the trust be first paid, and the balance be applied to the payment of the debts as specified in the trust, and that the defendants be enjoined from setting up or taking advantage of the said paper writing," &c., &c.

There was a rule for a *venire de novo*. Rule discharged. Defendants appealed.

*Bailey* and *Blackmer & McCorkle*, for plaintiff.
*Jones & Johnston* and *Clement*, for defendants.

RODMAN, J. 1st. As the plaintiff has stricken from his complaint his prayer for the sale of the land under the trust, we think there is no necessity for making the *cestui que trusts* parties to the action. *Calvert on Parties in Eq.* 213, citing *Wakeman* v. *Rutland* 8, Bro. P. C. 145, *Saville* v. *Tancred* 3, Swans. 141, and *Hyde* v. *White* 5, Sim. 524.

2d. By sections 224, 225, of C. C. P., the Judge may himself decide the issues of fact made in a case like this. He may also submit to a jury issues so framed as to present any questions of fact on which he doubts, arising out of the pleadings. But this is for his information only, or, as it is said, to enlighten his conscience. He is not bound by the verdict, but may nevertheless proceed to find the questions submitted to the jury otherwise than they have done, and to find facts not included in the issues submitted to them. He may of course adopt the findings of the jury, but upon the facts which he finds he is to pronounce his judgment. Whether he adopts or sets aside the findings of the jury, he is required to find the facts upon which he gives his judgment, and to state his conclusions of law and fact separately.

This is the idea upon which his Honor seems to have acted in this case; for in his judgment he declares the facts which he finds, adopting the findings of the jury as his own, and states his conclusions of law on the facts so found.

In this view of the case, any defectiveness or want of completeness in the issues, or in the findings of the jury, becomes immaterial, *provided*, it is supplied by the findings of the Judge, to which those of the jury are fragmentary and ancillary.

Two questions therefore arise, in every case of this sort.

1st. Does the evidence sustain the findings of fact by the Judge?

2d. Assuming the facts to be as found, do they support his conclusion of law as set forth in his decree?

As to the first, we think that all that the Judge finds as facts are established by the evidence, taken in connection with

the admissions in the pleadings. No one of them that is material seems to be really disputed. It is indeed alleged, that Blackmer & McCorkle took the drafts of James C. Turner on Swepson, in payment and satisfaction of his indebtedness to the *cestui que trusts* of the plaintiff. But it is clear [upon the evidence, that if they did so, they exceeded their authority, which was special, and was known to be"so to James C. Turner. It can never be held that an authority to accept. in payment, cash in New York or Baltimore funds will extend to accepting in payment the bill of the insolvent debtor, no matter upon whom it may be drawn : for the credit of a bill is not enhanced by the credit of the drawee until acceptance.

We come then to the second question.

The Judge finds, in substance, that the delivery of the deed, from the plaintiff to J. Calder Turner, was procured by the misrepresentations of James C. Turner to the agents of the plaintiff, and was in excess of their authority. As between the plaintiff and James C. Turner, it can scarcely be denied, that upon this the plaintff would be entitled to a re-delivery or cancellation of the deed, on returning to him his protested bills, and crediting the debts with the $2,000 paid.

But J. Calder Turner contends that he purchased the land from James C. Turner, and paid him for it $2,000, which was the $2,000 paid by him to Blackmer & McCorkle, the agents of the plaintiff ; that he had no notice of the representations of James C. Turner to Blackmer & McCorkle, which are the foundation of the plaintiff's demand ; and that he is therefore a purchaser for value and without notice, and entitled to protection as such.

The question arising out of this defence was submitted to the jury by the 4th issue, which embraced all the matters necessary to its determination. But the jury do not respond to the issue : they only find that J. Calder Turner did not give full value for the land.

This is manifestly defective. Neither does the Judge supply the defect by finding on the omitted points. He merely adopts the finding of the jury.

Perhaps in some cases it would be convenient for the Judge to set forth, among the facts which he finds as the foundation of his judgment, not only those which being disputed must necessarily be found, but also those which are admitted by the pleadings, if these last be necessary to support his judgment. But we do not think it necessary for him to do so. The pleadings being a part of the record may always be referred to, for the ascertainment of the facts constituting the case, and we think it is proper to refer to them for the purpose of supplying, by the allegations and admissions contained in them, anything which may appear wanting in the finding or declaration of facts by the Judge. We can see no reason compelling a Judge to find upon facts not put in issue. Merely, that his doing so would present the mass of facts in a more intelligible and convenient compass, cannot make it imperative.

It becomes necessary therefore to examine the answer of J. Calder Turner, to see whether he alleges facts which amount to the defence contended for, and pleaded in Art. V of his answer. Though not evidence for the defendant, he is bound by it, and the plaintiff may take it as true.

In Article 3, he says he purchased the land in question from James C. Turner, and paid him $2,000. The probability is, that this sum was paid with the expectation that it would be applied, as in fact it was, to the reduction of the incumbrances on the property, and, it may be, with the further expectation that James would extinguish the residue of the incumbrance; but this is not stated.

It is material that J. Calder Turner does not state when he purchased. If it was before the deed in trust to plaintiff, of course, it would be a clear defence. For this reason, and because all uncertain and defective statements in pleadings are

to be taken most strongly against the pleader, we conclude his purchase was afterward, and with at least constructive notice. He purchased then an equity only (for James had nothing more), for which he paid value. But it is clear that a purchaser, in the meaning of the rule we are considering, must be a purchaser of the legal estate. The proposition of the defence must be, that he acquired the legal estate from the plaintiff. Can he be considered as having paid value for that? Can the payment of value to James C. Turner for his equitable interest be connected with and attached to the conveyance to J. Calder Turner of the legal title, so as to bring him within the rule? It does not appear that Blackmer & McCorkle had notice that the $2,000 paid to them by James was paid by him as the agent of Calder, or that it was in any way obtained from him. If, by the transaction between the two Turners, the money became the property of James, then the payment by him was on his own account and in reduction of his debt, of which Calder, as purchaser of the equity of redemption, will have the benefit, but of which he cannot claim the benefit otherwise, or as a value paid by him for the legal estate. If James paid the money and received the deed as the agent of Calder, (for the actual handing over of the deed by Blackmer & McCorkle was to James and not to Calder,) then on the principle that notice to the agent is notice to the principal, Calder must be taken to have had notice of the whole consideration, including the representations on which the delivery of the deed was obtained.

It follows, that neither by the purchase of the equity of redemption for value, nor of the legal title without value, can J. Calder Turner be held a purchaser for value and without notice, in the sense of the rule.

Decree; that J. Calder Turner deliver up to plaintiff the deed made to him by plaintiff, and convey to plaintiff the land described in the deed, without prejudice to his right to the

equity of redemption, after the payment of the residue now unpaid of the debts secured in the trust deed to plaintiff, and that that the bills of James G. Turner on Swepson be delivered up to said James.

PER CURIAM.                                    Judgment accordingly.