ELIZABETH and WINNIFRED LEE, by their Guardian, and others,
TRUSTEES of the BAPTIST CHURCH of Newbern, *v.* WM. H. PEARCE
and wife ELIZABETH.

The innocence of a party who has profited by a fraud will not entitle him to
retain the fruit of another man's misconduct, or exempt him from the duty
of restitution.

Our Courts, under our present system, give relief not merely to the extent and
in the cases where it was heretofore given by the Courts of Law, but also to
the extent, and in the cases where it was heretofore given by Courts of
Equity; thus preserving the principles of both systems, the only change
being, that the principles are applied and acted on in one Court and by one
mode of procedure.

Certain known and definite fiduciary relations, that, for instance, of Trustee
and *Cestui que trust,* Attorney and Client, Guardian and Ward, and General
Agent, having the entire management of the business of the principal, are
sufficient under our present judiciary system, to raise a presumption of
fraud as a matter of law, to be laid down by the Judge as decisive of the
issue, unless rebutted. Other presumptions of fraud are matters of fact to
be passed upon by a jury.

It is error, for a Judge to charge a jury, that fraud must be proved by the party
alleging it, "beyond a reasonable doubt." The rule being, if the evidence

creates in the minds of the jury a belief that the allegation is true, they should so find.

(*Williams* v. *Powell*, 1 Ired. Eq. 460; *Goldsborough* v. *Turner*, 67 N. C. Rep. 403 ; *Heilig* v. *Stokes*, 63 N. C. Rep. 612, cited and approved.)

CIVIL ACTION tried before *Clarke, J.*, at the Fall Term, 1872, of the Superior Court of CRAVEN county.

The plaintiffs claim certain real property in the town of Newbern, under the will of Mary A. Lindsay, the aunt of the *feme* plaintiffs, Elizabeth and Winnifred. The will was dated 15th October, 1869, and admitted to probate the 23d April, 1870. Besides the real estate given to her nieces, and to the Trustees of the Baptist Church, of which the testatrix had been a member for a number of years, she bequeathed to the nieces her personal property.

In their complaint the plaintiffs state, that the property in dispute is in possession of the defendants, who claim under a deed purporting to have been made by the testatrix to Elizabeth, the wife of the other defendant, October 1st, 1867. This deed, the plaintiffs allege, is a fraud, and demand judgment, that it be so declared, and that the defendants be compelled by a proper order of the Court to convey to them. To support the allegation of fraud, the complaint alleges that the defendant, Wm. A. Pearce, was the confidential agent of the testatrix, and imposed upon her to sign the deed, when she thought she was signing a will. That he procured the deed to be written by one Wm. G. Bryan, who went to the house of the testatrix with him and witnessed her signing it; that it was a voluntary conveyance, without any consideration, and kept by the defendants for nearly three years before it was registered. And further, that the testatrix (the grantor in the deed) was an ignorant and illiterate woman, nearly sixty years of age, easily imposed upon, and spoke frequently of the writing she had given to Pearce, as her " will;" and asked, when she executed the will of the 15th October, 1869, if it did not revoke (destroy) the one

which she had made to him, she at the time being angry with him; that the deed was made to Pearce's wife, for the reason he was in embarrassed circumstances, and soon after went into bankruptcy.

The defendants, in their answer, deny the allegations of fraud and improper dealing in obtaining the deed made to the wife; alleging that the same was so made in consideration of the friendly feelings she entertained towards them, for the many acts of kindness and attention rendered on their part. They further deny the power of the persons named, to take under the will, as Trustees of the Baptist Church, as they are not incorporated; and that Z. Slade, one of the witnesses to the will, and a Trustee of the Church, could not prove the devise, being interested as such trustee.

It appeared from the evidence, that the defendants were frequently at Mrs. Lindsay's, the testatrix, and that Pearce, the husband, acted often as her agent, buying wood, &c. That his place of business was close to her dwelling, easily accessible from his back door. That the testatrix, before she fell out with him, spoke of Pearce as being her friend, and that she preferred him to her relations. After the disagreement, she wanted the witness Slade to write her will, giving her property to the church. This he refused to do, when she informed him she would get C. C. Clark to write it for her. This will, witness and one Amyett witnessed. She, the testatrix, wanted to know if the will would revoke the one made to Pearce; that she always spoke of it as a will, and never as a deed.

Bryan testified, that he wrote the deed for Pearce, that he carried it to Mrs. Lindsay and read it over to her carefully she signed it and he witnessed it. At the time, she said she wanted Pearce to have her property on account of his kindness to her. After leaving her room, the witness perceiving the revenue stamps were not cancelled on the deed, he carried it back to her, and had them cancelled. She again

reiterated to witness the obligations she felt under to Pearce, when they were alone.   There was no money paid.

The plaintiffs asked his Honor to charge the jury, that if they believed that W. H. Pearce was the confidential agent and manager of the affairs of Mary A. Lindsay at the time the deed was executed, it was void, without other evidence of fraud, and that the jury should find for the plaintiffs. This, the Court declined to do ; and instructed the jury that if they were satisfied that Pearce was the confidential adviser and agent of Mrs. Lindsey, that he was like a steward in England, and that he stood in the intimate relation of attorney and client, so that he was implicitly trusted, and looked to for advice and direction, then it was a strong badge of fraud, if he procured a conveyance of property for his own benefit, as in the case of a conveyance to his wife, and *with other evidence* may justify you in finding fraud ; but the proof must be clear and satisfactory.

Verdict for the defendants.   Plaintiffs moved for judgment *non obstante veridicto.*   Motion refused.   Plaintiffs again moved for a new trial.   Motion overruled.   Judgment for costs, and appeal.

*Green,* for appellants.
*Justice* and *Haughton,* contra.

PEARSON, C. J.   "The innocence of a party who has profited by a fraud will not entitle him to retain the fruit of another man's misconduct, or exempt him from the duty of restitution."   Adams Eq. 176.   So the case may be relieved from complication, by the fact that the deed is made to *Mrs.* Pearce, and may be treated as if it had been made to Pearce, to whom the fraud is imputed.

The provision in our present constitution, by which the distinction between actions at law and suits in equity, is abolished, and the subsequent legislation effects only the

mode of procedure, and leaves the principles of law and equity intact. The courts as now constituted, give relief, not merely to the extent and in the cases where it was heretofore given by the courts of law, but also to the extent and in the cases where it was heretofore given by courts of equity; in other words the principles of both systems are preserved, the only change being, that these principles are applied and acted on in one court and in one mode of procedure. For illustration, under the old system, if there was fraud in the *factum*, i. e., when one paper is substituted in the place of another, or when the party executes a paper through actual fear of death, or great bodily harm, the instrument is void, never was the deed of the party, and is treated in a court of law as a nullity. This was the extent to which courts of law, by reason of their peremptory judgments and regard for deeds, gave relief.

But courts of equity can mould and shape decrees so as to meet out exact justice between the parties, and regard deeds merely as a high species of evidence, and for these reasons give relief beyond the point at which courts of law stopped. So when there was no fraud in the *factum*, and no physical duress, a court of equity would take the case in hand and give fitting relief if the execution of the deed be procured by fraud or moral duress; if a bond, by having it cancelled; if a conveyance by a decree, treating the deed as having passed the legal title, and converting the party into a trustee, who is ordered to re-convey upon such terms as conscience requires. Under the present system, the same court gives relief in all of these cases, and the judgment is framed to suit the case. C. C. P. 216, "a judgment is the final determination of the rights of the parties in an action." The equities of the parties being involved in this final determination, as well as their legal rights, it follows that the Court must now give such judgment as will determine these equities and legal rights, in such manner as has hereto-

fore been according to the course of the courts respectively ;
for example, a *cestui que trust* conveys to his trustee at an in-
adequate price ; the decree would have been, that the trus-
tee re-convey on repayment, subject to an account for the
profits. The judgment now is, that the plaintiff recover the
land and damages and have a re-conveyance on repayment
of the price received, whether a consideration has been paid
or the conveyance be a mere act of bounty. Owing to our
registration laws, the judgment for land should direct a re-
conveyance to make the title appear on the Register's books.

As ancillary to the jurisdiction, to avoid deeds obtained
by fraud, undue influence or moral duress, courts of equity
established the doctrine that in certain fiduciary relations,
if there be dealing between the parties, on the complaint of
the party in the power of the other, the relation of itself and
without other evidence, raises a presumption of fraud, as a
matter of law, which annuls the act unless such presump-
tion be rebutted by proof that no fraud was committed,
and no undue influence or moral duress exerted. The doc-
trine rests on the idea not that there *is* fraud, but that there
*may be* fraud, and gives an artificial effect to the relation,
beyond its natural tendency to produce belief. It may be
harsh to presume fraud, and to take it for granted that every
man dealing with one who is in his power, acts the rascal,
unless he is able to prove to the contrary, which it is hard
to do ; but the doctrine was adopted from motives of public
policy, to prevent fraud as well as to redress it, and to dis-
courage all dealings between parties standing in these fidu-
ciary relations. It may be said, with truth, that it is in most
cases, as difficult for one in the power of another, to prove
the many acts and contrivances by which he has been taken
advantage of, as it is for the other party, to prove a nega-
tive ; so there is no sufficient reason for not enforcing a doc-
trine ,by which all dealing between the parties, is discounte-
nanced—both bargains and bounties.

6

In the case before us, the instruction asks for the application of this doctrine. The learned Judge refused to give the instruction, but assuming a certain intimate relation to be proved, left the allegation of fraud, as an open question of fact for the jury, treating the relation of the parties simply as an important link in the chain of evidence.

This ruling may have been put on the ground, that the doctrine of presuming fraud from the fiduciary relations of the parties, as a matter of law, is peculiar to Courts of Equity, where it is the province of the Chancellor, to decide the facts as well as the law ; and that the provision of the Constitution, by which all issues of fact are to be tried by a jury, in common with the Act 1796—abrogates this doctrine, and confines the Judge strictly to the law, leaving the facts exclusively to the jury.

It is true, in tribunals where the Court decides the issues of fact, as well as issues of law, there is an inclination to adopt rules, by which matters of fact are connected with matters of law, and the rule is applied whenever a given state of facts is made out by the evidence ; and if the presumption of fraud falls under that class of rules, this view would have great weight. But we are satisfied, that the presumption of fraud, from certain fiduciary relations, is not a mere rule of evidence. It is, as we have seen, a doctrine of the Courts of Equity, resting upon public policy, and the necessity of giving protection to the weak and confiding, against the strong and crafty. It is an important principle, by which fraud is *prevented* as well as *redressed*, and by the aid of which Courts of Equity carried "the protection of rights," much beyond the point to which Courts of law were able to reach. It is enough to know this doctrine has been established and acted on as a principle of equity for more than a century; or the ruling may have been put on the ground, that the relation proved, does not bring the case within the application of the doctrine.

This imposes upon us the duty of marking distinctly the dividing line between fiduciary relations, which raise the presumption of fraud, as a matter of law, and relations which raise a presumption of fraud, as a matter of fact; the duty is made especially important by the change in the tribunal for the trial of issues of fact.

Upon an examination of the cases, we find our task very difficult, owing to the fact, that as the Chancellor decided the facts as well as the law, it seemingly made no difference whether he put the dicision on the law or the facts; and provided he was satisfied of the fraud, there was seldom occasion to discriminate and set out, whether the conclusion was arrived at as an open question of fact, or by the aid of the presumption of fraud, as a matter of law. In very many of the cases, the evidence and presumption of law are both discussed, and it is left in doubt whether apart from the other evidence, the Chancellor would have declared his opinion to be, that the fiduciary relation was of such a character, as to raise a presumption of fraud as a matter of law; for a sample, *Williams* v. *Powell* 1 Ired. Eq. 460, a guardian, in three months and fifteen days after the ward arrived at age, procured the execution of a deed for his land.

CH. J. RUFFIN, in the opinion, assumes the doctrine of the presumption of fraud, as a matter of law, when a guardian deals with the ward just upon his coming of age, cites several cases, and then discusses the evidence and treats the allegation of fraud as an open question of fact. Whether this was because the interval of time, was supposed to prevent the application of the doctrine, or because the evidence opened a tempting field for discussion, by which the fraud could be demonstrated, does not appear; and it is left in doubt on which side of the line that case lies.

Adams, a writer remarkable for clearness, uses this expression in treating of the principle on which dealings between persons holding fiduciary relations, are set aside in

equity, when the only relation is that of friendly habits, &c. "But no rigorous definition can be laid down so as to distinguish precisely between the effects of natural and often unavoidable kindness, and those of undue influence or undue advantage." Adams' Eq. 185. Every rule of law must be "rigorous," that is, fixed and definite, and must "distinguish precisely." Certainty is the very essence of a rule of law. So these words are only appropriate to presumptions of fact.

Again on page 184, "where any person stands in a relation of special confidence, &c., he cannot accept a personal benefit, without exposing himself to the risk, in a degree proportioned to the nature of their conviction, of having it set aside as unduly obtained;" again, "a minister of religion may be bound by it, with even greater stringency. The same general principle applies to all the variety of relations, in which dominion may be exercised by one person over another; but in proportion as the relationship is less known and definite, the presumption of fraud is less strong." *Ibid.*

A presumption of law cannot be graduated by degrees of force. The relation relied on to raise a presumption as a matter of law, must of itself and without other evidence, either be sufficient for the purpose or not sufficient; if it be sufficient, the law raises the presumption and that ends the matter, unless the presumption be rebutted; if the relation be not sufficient, the instant you let it go and reach out for other matter to aid in proving the fact alleged, it ceases to be a presumption of law, and becomes a presumption of fact, to pass for what it is worth and no more; and the tribunal trying the issues of fact, may consider it as having a slight or strong tendency to produce belief, according to which, its degree of force will be graduated. Now, if Adam intends presumption of law, they cover all the variety of relation in life, and the doctrine would seem to be without limit.

This apparent want of clearness in the learned treatise, is explained by the fact, that the author was making deduction from cases, where the Chancellors seldom distinguish between presumptions of law and presumptions of fact, and when he says, " The presumption of fraud is less strong," to avoid absurdity, he must be taken to have reference to a presumption of fact. Indeed, in most of the cases, other facts besides the relation of the parties are taken into consideration, and the presumption is used as one of fact. It is only in a few cases, comparatively speaking, where the relation being a known and definite one, is allowed *per se,* to have the effect to raise a presumption of fraud as a matter of law.

A recurrence to the doctrine of presumptions in Courts of law will serve to elucidate. Presumptions are of four kinds:

1. Irrebuttable presumptions of law.

2. Rebuttable presumptions of law. These are acted upon by the Court itself as a part of the law.

3. Mixed presumptions ; called mixed, because the Court lays down the law and the jury acts upon it.

4. Presumptions of fact subdivided into slight and strong presumptions, according to their effect upon the burden of proof.

These are exclusively for the jury.

" Mixed presumptions consist chiefly of certain inferences, which, from their strength, importance and frequent occurrence, attract, as it were, the observations of the law, and from being constantly recommended by Judges and acted on by juries, become, in time, as familiar to the Courts and occupy nearly as important a part in the administration of justice as the presumption of the law itself. They are in fact *quasi* presumptions of law." Best, on the Principles of Evidence, 329. They are in fact a part of the law. After the Act 1796, which prohibits a Judge from intimating an opinion as to the weight or sufficiency of the evidence, it

was every day's practice for Judges to tell the jury that the lapse of twenty years raised a presumption of payment and established the fact, unless rebutted. The act 18— recognizes this presumption as part of the law and reduces the time to ten years. Presumptions of law and mixed presumptions are allowed in courts of law; " an artificial effect beyond their natural tendency to produce belief." The lapse of time is sufficient to establish the execution of a release or surrender when required to support the title. The oath of a mother, as to the paternity of her bastard child, unless rebutted, fixes the fact as a matter of law, without reference to the credit due her. The putative father may think it hard, to be required to prove a negative, but the presumption is based on public policy, to relieve counties of the charge, not on the ground that he is, but that he may have been, the father, and it is found in practice that few women are base enough to swear a child to a man who may not have been the father. See Patten's case. This instance furnishes an analogy for the presumption of fraud in Courts of Equity, as a matter of law. It is obvious, that Courts of Equity could have no " mixed presumptions," for the intervention of a jury was not required, and the Chancellor decided the cases himself. Nor did the courts have, as a distinct class, "presumptions of fact." Certain inferences of frequent occurrence were established, as presumptions to be acted on by the Court, as a part of the law, and to these an artificial effect was allowed beyond their natural tendency to produce belief. Other inferences were treated as presumptions, to be considered in connection with other evidence, and were deemed slight or strong, according to their natural tendency to produce belief, which is the characteristic of presumptions of fact, but the cases do not make a distinct classification.

Such being the condition of the subject in the books, on its coming out of the hands of the Chancellors, it is ours to

fix the limits of the doctrine in regard to the presumption, of fraud from the fiduciary relations, and to see to what extent it can be used, and is obligatory in courts where the Judge is confined to the law and the issues of fact are exclusively for the jury, to fit the old system to the new, by assigning such of its parts as had become rules of law, to be acted on by the Judge, and such of its parts as raise presumptions, entitled to more or less weight, according to circumstances, to be acted on by the jury.

After a full consideration of the authorities and "the reason of the thing," we are of opinion, that only "the known and definite fiduciary relations," by which one person is put in the power of another, are sufficient under our present judiciary system to raise a presumption of fraud, as a matter of law to be laid down by the Judge, as decisive of the issue unless rebutted.

For instances, and by way of illustration : 1. Trustee and *cestui que trust* dealing in reference to the trust fund. 2. Attorney and client, in respect to the matter wherein the relationship exists. 3. Guardian and ward, just after the ward arrives at age. 4. When one is the general agent of another and has entire management, so as to be in effect, as much his guardian as the regularly appointed guardian of an infant. There may be other intances. Fiduciary relations that do not fall under the first class, raise a presumption of fraud as a matter of fact, to pass before the jury for what it may he worth. For instance : 1. Family physicians ; 2. A minister of religion ; 3. Parent and child ; 4. When the only relation is that of friendly intercourse and habitual reliance for advice and assistance, and occasional employment in matters of business as agent.

Our case would seem, from what appears by the statement, sent, to come under this last instance ; for there is no evidence, that Pearce was the general agent of Mrs. Lindsay, entrusted with the management of all of her affairs of busi-

ness, although he was looked up to by her and relied on for advice and assistance, and frequently acted as her agent in buying wood and leasing her property; all of which evidence should be passed upon by a jury, as raising a presumption of fraud or undue influence, and as being a link in a chain of circumstantial evidence.

From the manner in which the case is stated and the remarks at the bar, there seems to have been a difference of opinion, as to the mode of trying a case, turning upon the application of principles of equity, in a Court having both law and equity jurisdiction; and in which the mode of pleading in Courts of Equity, to-wit: by complaint and answer is adopted; and the mode ot trial in points of law, to-wit: by a jury, is ordained by the Constitution.

From the exposition of the subject, that I have taken the pains to make, it appears, in certain known and fiduciary relations, the Chancellors, according to the mode of trial in Courts of Equity, made a presumption of fraud as a matter of law; in other relations, the Chancellors made a presumption of fact, which, with other evidence, might create belief of fraud.

According to the evidence sent to us, there is nothing to show that Pearce was the general agent of Mrs. Lindsay, having charge of all of her affairs, like a guardian in respect to his ward.

So the instruction asked for, was properly refused; but his Honor assumes, that there may have been such a general agency, and upon that supposition, gives to the relation the effect of a strong badge of fraud, which, with other evidence treating it as an open question of fact. Under this condition of things, we feel it to be our duty, to order a second trial, upon issues to be agreed on by the counsel, or settled by the Court in pursuance of the rule fixed by this Court.

But apart from this, the plaintiff is entitled to a *venire de novo*, for error in the charge in this; His Honor, after in-

structing the jury, that fraud must be proved (which is true except when from certain relations fraud is presumed as a matter of law) and after explaining the *onus probandi*, tells the jury that to justify a verdict finding fraud, they must be satisfied "beyond a reasonable doubt."

It is very questionable whether this formula, which has been acted upon in the trial of capital cases has answered any useful purpose; but it has never been extended to civil actions. There the rule is, if the evidence creates in the mind of the jury, a belief that the allegation is true, they should so find.

*Goldsborough* v. *Turner*, 67 N. C. Rep. 403 was cited on the argument in support of the manner in which this case is made up. In that case issues were found by a jury fixing the allegations of fraud ; and no consideration of the remarks of Justice Rodman is admissible, which would impose upon this Court, the province of trying "issues of fact," as distinguished from questions of fact. *Heilig* et al v. *Stokes*, 63 N. C. Rep. 612 ; for such a construction is opposed by the Constitution. Art. IV, sec. 10, "No issue of fact shall be tried before this Court." Nor is a construction admissible, which would impose on the Judge of the Superior Court the duty of trying issues of fact except when by consent of parties, the Judge is substituted for a jury, for such a construction is opposed by the Constitution, Art. IV, sec. 18, " In all issues of fact joined in any Court, the parties may waive the right to have the same determined by a jury," &c., in the absence of such waiver "all issues of fact" under the new system must be tried by a jury. These are constitutional provisions, and the provisions of C. C. P. and all other legislative acts must be construed in reference to the Constitution.

Error.

PER CURIAM. *Venire de novo.*