W. G. MILLER ET AL., Respondents, *v.* J. C. LULLMAN, ADMINISTRATOR, ET AL., Appellants.

February 7, 1882.

A husband having made an ante-nuptial promise to convey his property to his wife, did, three days after his marriage, convey certain real estate to a trustee for her separate use. Desiring to retain the power to revoke the gift, he at the same time caused to be executed a quit-claim deed from her and her trustee, to the husband's confidential agent, and one from him to the husband, the deed to the trustee alone being recorded. The husband never manifested any intention of revoking the settlement, and at his death, the wife retained the quit-claim deeds found among his papers. The husband's heirs sought to divest title out of the wife's trustee and to vest it in them. *Held,* that the three instruments must be construed together, and that so taken, they must be regarded as a settlement on the wife with power of revocation reserved. *Held, further,* that in order to show that the conveyance from the wife to the husband was a gift from her to him, the burden is upon the husband to show, by positive proof, the perfect fairness of the transaction.

APPEAL from the St. Louis Circuit Court, LINDLEY, J. *Reversed and remanded.*

TAYLOR & POLLARD, BIJUR & DAVIE, with whom is HENRY HITCHCOCK, for the appellants : The three deeds read together, and read in the proper light of the circumstances under which they were written, and of the subsequent conduct of the parties in regard to them, are to be construed as creating a " family settlement," in trust for the wife, with an unexercised power of revoking, retained in the hands of the husband. — 2 Pars. on Con. 503 ; *Gammon* v. *Freeman*, 31 Me. 243 ; *Clark* v. *Monroe*, 14 Mass. 351 ; *Gilliam* v. *Moore*, 4 Leigh, 30 ; *McDowell* v. *Hall*, 2 Bibb, 611 ; *Ford* v. *Belmont*, 7 Robt. 97 ; *Shoenberger* v. *Lyon*, 7 Watts & S. 194 ; *Brown* v. *Slater*, 16 Conn. 192 ; *Brown* v. *Batchelor*, 1 Hurl. & N. 265 ; *Jones* v. *Clifton*, 11 Otto, 225. Under such circumstances as are disclosed here, such a deed, from a wife, for the benefit of her husband, is presumptively made under his undue influence ; the burden is on the husband, or his heirs, to rebut this

presumption by positive proof; and, failing to do so, the deed will not be enforced in his or their favor. — *Meek* v. *Perry*, 36 Miss. 252; *Toker* v. *Toker*, 5 De G. J. & S. ——; *Cooke* v. *Lamotte*, 15 Beav. 234; *Hoghton* v. *Hoghton*, 15 Beav. 278; *Todd* v. *Grove*, 33 Md. 188; *Rodes* v. *Bate*, L. R. 1 Ch. App. 256; *Greenfield's Estate*, 14 Pa. St. 506; *Darlington's Appeal*, 86 Pa. St. 513; *Weeks* v. *Haas*, 3 Watts & S. 520; *Garvin* v. *Williams*, 44 Mo. 465; *Rankin* v. *Patton*, 65 Mo. 378.

OVERALL & JUDSON, for the respondents: The deeds having been duly executed and delivered, the recording or non-recording was wholly immaterial *inter partes*, and the title vested according to the legal effect of the deeds. — *Poe* v. *Domic*, 48 Mo. 442; *Martin* v. *Jones*, 59 Mo. 181; *Washburne* v. *Scott*, 17 Mass. 275; Washb. on Real Prop. 321–328; *Harrington* v. *Foltner*, 58 Mo. 473. The delivery to Miller is established by his possession and retention of the deeds, and is not denied by the answer. — 3 Washb. on Real Prop. 582; *Goodwin* v. *Bard*, 6 Baxter, 107; *Fairbanks* v. *Metcalf*, 8 Mass. 238. The delivery was absolute. A deed cannot be delivered to a grantee as an escrow. — *Ward* v. *Levis*, 4 Pick. 520.

BAKEWELL, J., delivered the opinion of the court.

This is an action by the heirs at law of George C. Miller, deceased, against his widow, his administrator, and the trustee of his widow, the general object of which seems to be to obtain a decree divesting title in certain real estate in St. Louis, out of the trustee of the widow, and vesting the title in plaintiffs, subject to the dower of the widow. The decree was made in accordance with the prayer of the petition.

It appears from the pleadings and evidence that George C. Miller was a man of eccentric and dissipated habits, engaged in the lottery business in St. Louis. He was solvent at the time of the occurrences set forth below, and at the

time of his death; and owned, besides the real estate in question, a large amount of personal property. He was of a suspicious disposition. He was engaged in some litigation, and liable for a large amount of costs growing out of that litigation, the payment of which he desired to avoid, claiming that a part of it ought, in justice, to be paid by a person interested with him in this litigation. He was also annoyed by fear of suits growing out of his lottery business. His habit was to some extent to so dispose of property, as to protect it, if possible, from seizure. He had resided in St. Louis, but in 1878 was living at a hotel in Louisville. He there became engaged to the defendant Kate, and before his marriage, stated to her sister, with whom she was living, who had brought her up, and who stood to her as a mother, that he was in very independent circumstances, that his habits were bad, and that, in order to protect his intended wife, he would convey his property to her. The engagement lasted for some time, was broken off several times, and he made this promise repeatedly. The last time he made it was a few days before his marriage, when he said he was going to give his property to the defendant Kate, as her bridal present. Six months before that, he had showed some of the real estate in question, on Ware Avenue, to his wife's sister, as part of the property he would give to his wife. Miller was married to the defendant Kate, on February 22, 1879, at Louisville. They immediately came to St. Louis. On their arrival, Miller went to see his confidential legal adviser. Some of his property was then advertised for sale under a fee-bill for $600. He said to his legal adviser: "I am tired of these damned land cases. I want to give my property to Kitty. Now, I won't trust her. How can I hold a control over her?" The lawyer in question testifies as to this, and says that he thereupon advised Miller: "The proper way to do is to make a deed to me or to any other person as trustee. Then let me and you and her make a deed to Bob Kerr,

and transfer it over to you." This witness says: " He took my advice and did it, and the papers were signed at the Lindell Hotel, Mr. McCabe taking the acknowledgments. Mr. Kerr never took the deed. He signed it and left it on the table. I took all the deeds down to the recorder's office and recorded the one to myself as trustee, and gave the others to George C. Miller. I will state further, that Mr. Miller was very jealous of his wife. Mr. Miller said he intended his wife should have the property if she behaved herself. * * * When Kerr signed the deeds I had them all prepared on the table. They were all signed at the same time. Kerr just signed the deed and left the room. The deed from Miller and wife to me as trustee, was the first deed; the second deed was from Miller and wife to Kerr. That was signed next. I don't believe there was over five or ten minutes between the signing of the deeds. They were all signed at the same sitting."

Kerr was Miller's private secretary. He swears that before his marriage, Miller stated to him that it was his desire to transfer the Ware Avenue property and other property belonging to him, to Kitty Creal, afterwards his wife, the defendant Kate Miller. After his marriage, Miller told this witness to meet him at a lawyer's office to sign a deed; that he was going to give that property to his wife, that his wife would then give Kerr a quit-claim deed, and Kerr was to give a quit-claim deed to Miller. The witness never had the deed made by Miller and wife and the trustee to him in his possession. The plaintiff objected to any statement being made by the witness as to whether or not there was any consideration given to Kerr or by him, and the objection was sustained. Miller told the witness that he wanted simply to hold the quit-claim deeds and not record them, so that in case there should be any trouble between him and his wife he would record them, and the property would come back to him; that he intended to make this property over to his wife as a present; that the

property should be hers; that he would keep the deeds and "hold them over his wife."

The deeds spoken of by the witnesses are all dated February 26, 1879, and acknowledged the next day, before the same notary. The deed from Miller and wife to defendant Mead, as trustee for the sole and separate use of defendant Kate, is recorded; the two other deeds are not recorded. All the deeds purport to convey the fee. The unrecorded deeds are from Miller and wife and Mead to Kerr, and from Kerr to Miller; these last deeds are simply quit-claims. The deed to Mrs. Miller's trustee is a deed of bargain and sale. The descriptions of property are the same in each. The petition alleges that Mrs. Miller, after her husband's death, found these quit-claim deeds among his papers, and that she had them at the date of the suit, and refused to record them, claiming to own the property in question by virtue of the deed made to her trustee. The evidence is not conflicting. The only oral testimony is that of the sister of Mrs. Miller, of Mrs. Miller's trustee, and of Kerr.

1. It may be very plausibly contended that the deed from Miller and wife and the trustee to Kerr was of no effect for the want of the essential element of delivery. But we do not pass upon that question, as it is unnecessary to do so in the view that we take of this case.

2. We do not see how it can be held, in the light of the undisputed facts in evidence, that Miller put himself to all the trouble and expense inseparable from this transaction, merely for the purpose of conveying to himself property that he already owned. He was quite solvent, it appears, and rich. There was a fee-bill out against him for $600, the payment of which he wished to avoid. But he could hardly hope that this conveyance to his wife would put this property beyond the reach of any existing creditors, whether they had a lien or not. He was meticulous; and the character of his business was such as might possibly subject him

and his employees to annoyance from the police; but it does not appear that there were any suits against him of a civil or criminal nature. Nothing appears to raise any reasonable doubt that he intended to give this property to his wife, as he had promised. All his statements in regard to the transaction were to this effect, and the deed speaks for itself. He thought, by the device of the quit-claim deeds, to make a settlement with the power of revocation. A settlement may be made by deed with a power of revocation reserved to the grantor in the body of the instrument or indorsed upon it before the execution. 1 Sugd. on Powers, 158. We ought so to construe the contract embodied in these three instruments simultaneously executed, as to make them accomplish something in reason, and not to nullify the transaction. The method adopted was, perhaps, a clumsy one; but, construing the instruments together, as we think they ought to be construed, we take the apparent purpose of the three to have been to settle the property upon the wife with a right of revocation in the husband in case of want of fidelity on her part to her duties as a wife. If we are right in taking this view of the effect of these instruments, the decree should have been for the defendants, because it is plain that there was no revocation, and it is not pretended that there was any ground for revocation, or any desire on the part of the settler to change the settlement in any way.

3. But if this view, which we have no doubt is correct, is untenable, then we think that the judgment should be reversed upon another ground.

The conveyance to Mrs. Miller's trustee was made in accordance with an ante-nuptial promise. It was made for a good consideration; at least, it was made in strict pursuance of a promise made before marriage, and with a view to marriage. Mrs. Miller, at the time she executed the deeds which conveyed this property to Kerr to be conveyed to her husband, had no other legal adviser than her hus-

band's confidential lawyer and adviser, if she had any legal adviser at all. She was a newly married woman; her age does not appear, but she was necessarily under the control and influence of her husband. The office of Mr. Mead, the lawyer of her husband, and her trustee in the deed, is spoken of as the office of Mead & McCabe. It would appear that they were associated, and the notary who takes the acknowledgments is McCabe. So little was she informed of her rights and of the legal effect of these instruments, that the certificate of the notary who takes her acknowledgment to the deed to Kerr, states that she relinquished her dower in the property conveyed. The circumstances are such as to throw upon the representatives of her husband, claiming under her quit-claim deed, made without valuable consideration, the burden of rebutting a presumption raised by the evidence, that the conveyance made by her at the instigation of her husband and in the presence of him, his lawyer, and his secretary, was made under circumstances which annul the act, as procured by what is a fraud in law. Where there is a question of a deed of gift from client to attorney, penitent to spiritual adviser, child to parent, ward to guardian, or wife to husband, the perfect fairness and honesty of the transaction must be established beyond reasonable doubt. There may be fraud where such relations exist, and there is *prima facie* an incapacity to contract when the relation appears. *Garvin* v. *Williams*, 44 Mo. 465; *Lee* v. *Pearce*, 68 N. C. 81; *Meek* v. *Perry*, 36 Miss. 252; Taylor on Ev., sect. 129; Story's Eq., sect. 307–311. In transactions connected with the transfer of property, where a fiduciary relation exists, especially where there is a gift, the non-intervention of any disinterested third party, or independent professional adviser, where the donor, from the circumstances, seems to be one likely to be imposed upon, is a probable test of undue influence. *Cadwallader* v. *West*, 48 Mo. 483.

If, then, we give to the transaction the meaning which

plaintiff claims that it has, we think that the evidence does not warrant the decree.

The judgment will be reversed and the cause remanded. Judge THOMPSON concurs; Judge LEWIS is absent.