[No. 6391.]

## PAUL v. McPHERRIN.

1. **Equity—Bona Fide Purchase—Who May Plead**—Only one having a legal as well as an equitable title can assert this character. Plaintiff dealing ostensibly for Webster purchased lands from Yeager. The title was conveyed to Webster. Before receiving the conveyance of Webster, plaintiff acquired notice of a proper conveyance by Yeager. Held, he was not a bona fide purchaser.—(526)

Even Webster was not a bona fide purchaser, because he had paid nothing.—(529)

That plaintiff in his purchase falsely assumed to act for another, and delayed in taking the conveyance from his trustee, in order to create an appearance of good faith, was thought by the court an additional reason to deny his claim.—(528, 529)

But, the other party conceding it, he was allowed what he had paid.—(529, 530)

2. **Appeal—Finding on Conflicting Evidence**, will not be disturbed.—(530)

*Appeal from Phillips District Court*—Hon. H. PLATT BURKE, Judge.

Messrs. MUNSON & MUNSON for appellant.

Messrs. ALLEN & WEBSTER for appellee.

Mr. JUSTICE HILL delivered the opinion of the court:

This action was brought by the appellee to quiet his alleged title to one hundred sixty acres of land in Phillips County; he, as plaintiff, alleged that he was the owner in fee and in possession, and that the defendant claimed an interest therein adverse to him, which was unfounded.

The defendant answered, claiming ownership in himself through sundry conveyances, also setting forth several other specific defenses, including that of title under a tax deed, and prayed that he be allowed to go hence, etc. The plaintiff, replying, denied all the allegations of new matter.

It is admitted that the land was vacant at the time of the commencement of the action. The record shows that, on or about April 1, 1893, one Yeager was the owner of the land in controversy, at which time he conveyed it (for $925.00) by warranty deed to Henry White, a Frenchman, who knew but little about business transactions; that he, White, kept the deed with other papers until about 1903, when the same was destroyed by fire; that it had never been recorded; that, after his purchase, White entered upon the land, constructed some buildings and lived there for a time, and after moving away he rented it for a year or two; thereafter he ceased to rent it, and failed to pay the taxes for the years from 1895 to 1905; that on June 23, 1905, he conveyed it to the appellant, Paul, by warranty deed, which was recorded upon the 28th day of June, 1905; that on or about March 7, 1905, the appellee wrote to Mr. Yeager, the former owner, who was then in Nebraska, asking his price for a quit-claim deed to the property; this was followed by another letter of March 15, again by another of March 16, followed by several others, the substance of which were to the effect that the appellee would attempt to make a sale for Yeager of a quit-claim deed to the property. In the first letter he stated that a tax deed had been issued against the land, which, he admitted at the time of the trial, was not true. He further stated that there was a large mortgage standing against the property which, he admitted at the time of the trial, was incorrect, and that he was

mistaken concerning.  In his letter of March 15, he
states:

"If I can obtain the assignment of the mortgage
at a reasonable figure, I can make this deal go for
you, and I have been thinking about the best thing
to do would be to draw up a deed for you to sign
it up, and you sign it and return it to me, and then
I will hold it, waiting to see what we are able to do
about the mortgage.  If the mortgage cannot be
bought at a reasonable figure, of course I will send
the deed back to you; but if it can, I will remit you
the money."

In another letter, he forwarded a deed with the
name of the grantee as B. M. Webster; the consider-
ation named, and was to be, $25.00.  In this letter,
he requested the deed be sent to a bank in Denver
or direct to him at Holyoke.

On April 4, he wrote again, stating that Mr.
Webster would like to know if he, Yeager, had ever
issued any other quit-claim deed to this property
besides this one, in which he states:  "Some way
he seems to be a little leery about it.  If that point
is once settled, I think it is all settled."  In reply
to this letter, Yeager, on April 6, wrote the appellee
as follows:

"Yours at hand and contents noted.  No, I never
made a quit-claim deed to any property before, and
especially that, but if you will kindly return that
deed to me I will be very glad."

In reply to this letter, the appellee wrote:

"I could not contemplate returning the deed to
you at all, because I don't think that Mr. Webster
wishes to sell his interest in the property, and as
he has had the deed filed for record, it is entirely
out of my hands, because the clerk has no authority
to turn it over to me."

The deed from Yeager to Webster was dated

March 15, 1905; recorded April 1, 1905. The deed
from Webster to the appellee McPherrin was dated
June 26, 1905, recorded December 21, 1905. It was
also shown that McPherrin was the real purchaser
of this quit-claim deed from Yeager; that he paid
the $25.00 therefor; that Mr. Webster had no inter-
est in the property at any time, and that he, Mc-
Pherrin, used his name and had the transfers so
made in order to make a better bargain with Yeager
than he probably could, had Yeager been advised
that he, McPherrin, was dealing for himself. The
court, among other things, found that McPherrin
had no notice of the sale from Yeager to White prior
to the transfer from Yeager to Webster; that the
deed was made to Webster, and the $25.00 paid
Yeager by McPherrin before McPherrin received
such notice; that McPherrin did have notice of the
transfer from Yeager to White before taking his
conveyance from Webster; that the question of
whether or not McPherrin was a purchaser in good
faith without notice relates to his purchase in this
manner from Yeager, and said Yeager's transfer of
title to Webster and not to the transfer from Web-
ster to McPherrin; that McPherrin was therefore a
purchaser in good faith and without notice and en-
titled to a decree quieting his title to the property.
In this, we think the court misconceived the legal
effect of the evidence, and, in order for the appellee
to defend his plea of an innocent purchaser, in good
faith, without notice, under the conditions shown,
he must have held both the legal and the equitable
title to the property prior to his actual notice of the
transfer from Yeager to White by the execution and
delivery of the unrecorded warranty deed destroyed
by fire, and by making the false representations in
order to secure the quit-claim deed from Yeager to
Webster and the transfer from Webster to himself

and in this round-about way ultimately secure the legal title within himself, he took his chances upon the delay in perfecting his title in this manner, and ought not to be allowed to claim title in himself at the time of the transfer to Webster. Inasmuch as the court found, and it is practically admitted, that he did have notice of the execution and existence of the unrecorded destroyed warranty deed from Yeager to White, and the other deed being of record from White to Paul prior to the execution and recording of his deed from Webster to himself, he not having, prior thereto, the legal title in himself, should be bound by the result of this knowledge and the effect of the title conveyed under the warranty deed from White to Paul. It seems to be uniformly held that, in order for a person to claim the protection of an innocent purchaser without notice, he must hold both the equitable and the legal title within himself prior to the time of actual notice. At which time, in this case, it is admitted that the legal title acquired by the quit-claim deed from Yeager to Webster was in Webster, who was neither an innocent purchaser for value without notice, nor had given value received, or any consideration, therefor. In justice to Mr. Webster, it is proper to state that the record does not disclose that he had any knowledge of this transaction at the time the deed was executed to him as grantee therein. He having no interest in the property, and the legal title not being in the appellee, McPherrin, at the time he had notice of everything, and his interest being an equity to the extent only of the amount paid, does not place him in the position of a *bona fide* purchaser without notice.

In vol. 23, American and English Encyclopædia of Law, second edition, at page 518, the rule upon this subject is stated as follows:

"As a general rule, the purchaser is not entitled to protection if he receives notice before he acquires title by conveyance, even though before notice he has paid the entire purchase price. And the same principle applies *a fortiori* to a case where a part payment has been made before notice. As a consequence of the foregoing propositions, it has been deduced as a general rule in the United States that, if the purchaser has not obtained the legal title before notice of the prior equity, even though by contract and payment without notice he has acquired an equitable title, he cannot, after notice, acquire the legal estate and thereby defeat or postpone the prior equity, unless his own equity is of superior merit; but in order to produce such a result, he must acquire not only the equitable, but the legal title, without notice."

To the same effect are: *Goldsborough v. Turner,* 67 N. C. 412; *Nantz v. McPherson,* 23 Ky. 597; *Bush v. Bush,* 3 Strobhart's Equity Reports (S. C.) 131; *Anketel v. Converse,* 17 Ohio St. 21; *Gallion v. M'Caslin,* Blackford's Reports, vol. 1, p. 91 (Ind.); *Gerson v. Pool,* 31 Ark. 85; *Baldwin, Jr., v. Sager,* 70 Ill. 503; *Mason et al. v. Mullahy,* 145 Ill. 383.

In this case, it was admitted by the appellee, and shown by other evidence, that the substance of his letters to Yeager in pretending to act for any one other than himself or making the sale to Webster, were not correct. Likewise, his statements concerning a tax deed, as well as a mortgage being on the land at the time the letters were written, were untrue. In the pleadings he states that his reasons for having the legal title taken in the name of Webster was upon account of the tax deed being in existence, and that Mr. Webster, being an attorney-at-law, could make a better settlement and adjustment concerning that cloud upon the title than he could. The

evidence shows there was no tax deed upon the property at the time he wrote the letter to Yeager so stating, while at the trial his justification for this line of action was, that it had been demonstrated by real estate men in his section, including himself, that they could often deal in somebody else's name better than they could in their own. In other words, that they could strike a better bargain by stating that they were representing someone else and thereby stood in a neutral position as to giving advice concerning the value, price to be taken, the advisability of making a sale, etc., and in this manner procure a purchase for a less amount than if the owner understood they were purchasing for themselves, in which case it would naturally follow that the seller (a non-resident) would probably investigate through other sources, as to prices, advisability of selling, etc., and the object in making such statement would be, and probably was here, to avoid this line of action upon behalf of the seller.

It was further shown that, at the time Yeager requested the return of his deed, the $25.00 had not then been paid, and there was no reason except the desire of the appellee to ultimately secure title to the land, why such title as the quit-claim conveyed could not have been retransferred to Mr. Yeager, who, probably having been smitten by a guilty conscience, desired the return of the deed, so that the title might stand as originally conveyed by him through the warranty deed executed many years prior thereto, and through which the title of the appellant could not have been questioned had it not been for the execution and recording of the quit-claim deed to Mr. Webster.

The record further shows that the appellee, after taking title in the name of Webster, delayed having a deed executed from Webster to himself for some

time, and after its execution and delivery to him, delayed the recording of the same, evidently in order to give the entire transaction a phase of *bona fide* purchaser from Yeager to Webster and then from Webster to himself, which facts, among others, lead to the conclusion that the appellee should not be held to be a *bona fide* purchaser for value until he had received the legal title to the land.

Accepting the findings of fact by the trial court as conclusive, it follows that the appellee, McPherrin, advanced the $25.00 without notice, the legal title was then placed in the name of Webster, and the appellee afterwards, with notice, took from Webster the legal title. Webster was not a *bona fide* purchaser. He paid nothing for his title. The total extent of McPherrin's interest, if any, at the time he had actual notice, was a resulting trust to the extent of the $25.00 which he paid Mr. Yeager for the quitclaim deed to Webster before notice. He was not a *bona fide* purchaser at the time the deed was made to Webster; he had not then obtained a legal title, and did not obtain it until after he received notice of the former transfer. His reason, given upon the witness stand, for having the legal title placed in the name of Webster and later transferred to him, is such that he ought not to be given the privilege awarded to an innocent purchaser without notice.

Counsel for the appellant, following the rule laid down in certain Illinois cases, appear to concede that, at the time of his actual notice, McPherrin had an interest in the property in the way of a resulting trust to the extent of the $25.00, which he paid Yeager for the quit-claim deed to Webster before notice. Without deciding whether this rule is applicable in this case where fraud appears to be shown in securing the equity, by this concession upon the part of

(34)

the appellant this amount should be refunded to the appellee should he desire to receive it.

This disposition of the main contention makes unnecessary any consideration of the other assignments of error urged by the appellant.

The cross-assignment of error relates to overruling objections to the introduction of oral testimony pertaining to the conveyance to appellant's grantor concerning which it is claimed no description whatever of the contents of the deed was offered in evidence, and that there was no proof of its contents sufficient to show that the instrument itself contained all the clauses and language sufficient to convey title to the property — that is, that while the witnesses show the execution of the deed, they could not state its contents or language sufficient to show that a deed sufficient in form to convey title under the law was executed; in answer to which it is sufficient to say that the trial court appears to have taken the other view. The evidence, perhaps, could have been more full and explicit upon this subject, but there is evidence upon which the court's findings can be sustained, and under the well-known rule it is not the province of this court to disturb them.

For the reasons stated, the judgment is reversed, and the cause remanded.          *Reversed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE GABBERT concur.