STEPHEN M. CHESTER, Respondent, *v.* FRANCOIS HENRY JUMEL, *et al.*, Appellants.

*Supreme Court, First Department, General Term, May 24, 1889.*

1. *Assignment for creditors.*—An assignment of things which have no present actual existence, but rest in possibility only, is not against public policy, if fairly entered into, and, in such case, will be supported.

2. *Attorney and client. Compensation.*—Neither section seventy-three of the Code, nor section 6, 3 R. S., page, 970, prohibits an agreement to give an attorney a certain share of the proceeds for his services in collecting a claim.

3. *Same.*—The attorney, under such a contract, is entitled to a like share in the increase in value of the property.

4. *Same. Attorney's lien.*—An attorney has a lien for his services to the extent of his interest, upon the cause of action of his client.

5. *Equities. Conflicting. Parties.*—All the parties interested in a fund,

where conflicting equities are required to be settled before its distribution can be made, must be brought before the courts, before a sale of the property, or distribution of its proceeds, will be directed by the judgment.

6. *Attorney and client. Mortgage security.*—It is no objection to the allowance of a certain sum, for services rendered at the attorney's request in relation to the property, from his share, that it was secured by a mortgage on his interest, nor need such mortgage be filed.

7. *Same. Contract to bear expenses.*—An agreement by an attorney to take measures for the recovery of property for his clients, for an interest in what should, by his efforts, be realized, and, for this purpose, to make expenditures and disbursements required for the recovery of the property by suit, when entered into in good faith, will be permitted and sanctioned.

Appeal from a judgment entered on a report of a referee.

*Everett P. Wheeler* and *John J. Macklin*, for appellants.

*Douglass Campbell* and *Edward Winslow Paige*, for respondent.

DANIELS, J.—The object of the action was to secure a sale and disposition of real estate, and the application of its proceeds, and of money already received, to the payment of assignments, and charges alleged to have been created against forty-seven and one-half per cent. of the property. It was a part of the estate of Stephen Jumel, who died in the city of New York, in 1832. He was the owner of property, situated upon, or near, Washington Heights; and the appellants, being his heirs, and residing in France, entered into an agreement with Charles Adolph De Chambrun, who, at the time, was solicitor of the French Legation in Washington, for the taking of measures to assert their rights to, and recover the property. The agreement was made on the 20th of April, 1876, and was accompanied with a power of attorney, both of which were executed by these heirs. By the agreement itself, they bound themselves to

pay to Chambrun the sum of forty-seven and a half per cent. of all the gross sums which he should recover for the Jumel heirs.

And the agreement further stipulated that, " they henceforth give to the said De Chambrun a lien and a mortgage, to the amount of the sum of forty-seven and a half per cent. on all the property on which said Mr. De Chambrun shall establish the rights of the Jumel heirs.

" This share is attributed to him voluntarily and freely, as much for his having made known to them the existence of that estate, as for fees. And, also, to repay him for advances, disbursements, and whatever expenses he may have made, and should make, to bring about the recovery of the sums here above mentioned, of fifty-two and one-half per cent. (52½ per cent.) paid to the Jumel heirs, so paid out of all sums recovered before taking any sum whatever for expenses, fees, and disbursements."

This agreement was made between the heirs and De Chambrun, at Mont De Marsan, in France ; and, soon after it was made, De Chambrun entered into an agreement with John A. Stoutenburgh, of the city of New York, by which, and in consideration of the premises, and in further consideration of the professional services of said Stoutenburgh, rendered, and to be rendered, the said De Chambrun, as the attorney in fact of said heir, and for himself and associates, hereby agrees to pay, or cause to be paid, to said Stoutenburgh, the sum of four per cent. (4 per cent.) on any and all proceeds of said property, real, personal or mixed, to be paid in cash or land, or in both cash and land, as the case may be, to the full extent of the property recovered.

And it is further, also, part of this agreement that the said sum of four per cent. (4 per cent.) is, under and by virtue of the power invested in said De Chambrun by the said heirs of the said Jumel, created and made a specific lien on the said property, all and every part thereof, and is to be paid as fast as proceeds, money or property shall be recovered, under

and by virtue of the power conferred upon said De Chambrun, whether the same be by suit or compromise.

And in consideration of the premises, the said Stoutenburgh agrees to continue to give his advice, and all due and proper attention, to the prosecution of all suits and proceedings for the recovery of said property.

Stoutenburgh entered upon the performance of this agreement, and continued in its performance for such a period of time as entitled him to this share of the property, or its proceeds; and he assigned his right and interest to the plaintiff in this action, who instituted and prosecuted it for the enforcement of this agreement.

By way of defense, although not set up in the answers, the appellants objected that the agreement made between themselves and Chambrun was unlawful and incapable of being enforced under the statutes of this state.

But the objections presented for that purpose were overruled by the referee, who held the agreement to be lawful and capable of enforcement. It was not an agreement prohibited by section 73 of the Code of Civil Procedure, for it was not a purchase or an agreement with Chambrun, as an attorney or counselor, of any bond, promissory note, bill of exchange, book debt, or other thing in action, with the intent and purpose of bringing an action thereon.

Neither was it rendered invalid, or unlawful, by the statute making it a misdemeanor to buy, or sell, or make, or take, a promise, or covenant, to convey a pretended right or title to lands or tenements, within 3 R. S. [6th ed.], 970, § 6. But it was authorized and sanctioned, even if Chambrun acted as an attorney in making it, by section 66 of the Code of Civil Procedure. What he appears to have agreed to do, was to take measures for the recovery of this property for the appellants, for an interest of forty-seven and one-half per cent in what should, by his efforts, be realized; and while doubt was expressed in Coughlin v. N. Y. C., etc., R. R. Co. (71 N. Y. 443), whether the person stipulating for

this interest could lawfully agree to make the expenditures and disbursements required for the recovery of the property by suit, it seems to have been considered in Fowler *v.* Callan (102 N. Y. 395 ; 1 N. Y. State Rep. 1), that such an agreement, when entered into in good faith, would be permitted and sanctioned, and the good faith of the parties entering into this agreement has neither been impeached nor questioned ; and the referee, therefore, rightly overruled these objections to the validity of this contract.

By the language which was employed in making it, Chambrun had the authority to enter into the agreement, which has been made the foundation of the plaintiff's right to maintain the action. For, it was agreed between these parties that, " It is besides understood that each of the parties shall be free to sell his share of the said rights at a discount agreed on between himself and the purchaser, or to preserve all his rights up to the time of the final settlement of the said inheritable rights." This clause was expressed in very broad and general language, which seemed to be intended to include all the parties who should become interested in the exertions to be made for the recovery of this estate ; and that Chambrun had the authority to make the agreement which he did with Stoutenburgh, also follows from the right secured to him, to forty-seven and one-half per cent. of the gross sums which he should recover for the Jumel heirs.

The further provision that gave him a lien and mortgage for that amount, of all the property to which he should establish their rights, in no manner reduced the force of the preceding language, which was, in effect, that he should have this sum of forty-seven and one-half per cent. of whatever might be recovered by him, under the authority of the agreement. It was not an agreement on the part of the heirs to pay him this proportionate part, but it was an agreement by which this sum of forty-seven and one-half per cent. was to be given to him, of the gross sums which should be

recovered for these heirs.    That this was the intention of the
parties is further supported by the language that what
each was to receive has been denominated his or their share ;
and the entire extent to which the heirs, under the agree-
ment, were to become entitled to the property recovered,
was the fifty-two and one-half per cent.    It did not vest
them with a title to the remainder of the property ; and, if
that was not to vest in Chambrun, the agreement contained
no provision for vesting it in any one.    The frame-work of
the agreement, as well as these designations of the different
interests, therefore, disclosed no other intention than that
Chambrun was to become, under its provisions, the owner
of this forty-seven and one-half per cent.    And that was an
interest which, in the law, as well as by the agreement itself,
was capable of being assigned and charged in favor of per-
sons employed by him for the successful prosecution of the
proceedings required to be taken.    It was no objection to
the agreement in this manner made by Chambrun that the
property had not, at the time, been recovered, or the title
of the heirs to it in any manner conceded.    What Cham-
brun acquired by the agreement was the right to this inter-
est in the property, when it should be recovered, and the law,
as well as the agreement permitted him, as this interest,
when it was acquired, was to become his property, to subdi-
vide and dispose of it to other parties.    Field v. Mayor, etc.,
2 Seld. 179.

As to such assignments, it was said in the opinion of the
court, that " Whatever doubts may have existed heretofore
on this subject, the better opinion, I think, now is, that
courts of equity will support assignments, not only of choses
in action, but of contingent interests and expectations, and
of things which have no present actual existence, but rest
in possibility only, provided the agreements are fairly en-
tered into, and it would not be against public policy to
uphold them.    Authorities may be found which seem to be
inclined the other way, but which, upon examination, will

be found to have been overruled, or to have turned upon the question of public policy." Id. 187.

This principle has the sanction of Wylie v. Coxe (15 How. U. S. 415), and of Trist v. Child (21 Wal. U. S.), 441. It was there held that " There must be an appropriation of the fund *pro tanto*, either by giving an order, or by transferring it otherwise in, such a manner that the holder is authorized to pay the amount directly to the creditor without the further intervention of the debtor." Id. 447. And this was again sanctioned in support of a contingent compensation for professional services of a legitimate character in Stanton v. Embrey (93 U. S. 548), and it also received the approval of the court of appeals in this state in Fairbanks v. Sargent (104 N. Y. 108; 5 N. Y. State Rep. 531).

The agreement with Stoutenburgh was to pay, or cause to be paid to him, the sum of four per cent. on any and all proceeds of property, real, personal or mixed, either in cash or land, or both cash and land, to the full extent of the property recovered, and that was made a specific lien on every part of the property, and made payable as fast as proceeds, money or property should be recovered. It is quite evident, from this agreement, that it is not to be restricted to a mere personal obligation on the part of Chambrun to pay this sum of four per cent, but that it was intended to secure to the attorney the right to that proportion of the property, or proceeds, of the litigation which was to be commenced and carried on. The language of the agreement, already referred to, discloses that to have been the intention and expectation of the parties, and that entitled the plaintiff, as the assignee of Stoutenburgh, to bring this action for the satisfaction of this contract.

After suits had been brought, by virtue of this employment, adjustments took place with the defendants in the litigation, by which valuable interests in the property affected by it, in favor of these heirs were conveyed to them. The

first of these adjustments and conveyances took place on the 20th of June, 1880, the second in July, 1881, and the third on the 4th of April, 1883. A suit in partition was commenced after the first adjustment, for the partition and sale of the property affected by the conveyances of an undivided interest in it. This property was sold in the year 1882, and, under power of attorney given for that purpose, so much of it was purchased for the benefit of the parties as was included within the conveyances made to them, and the property obtained by these adjustments, with the exception of particular portions otherwise disposed of, was formally conveyed to the defendant, John Elliott, as a trustee.

The value of the property so conveyed to him at that time amounted to the sum of $152,225.44, and it remained in this manner vested in him at the time when this action was commenced, in 1886. And the object of this action was to secure a disposition of the property, and the payment of the shares, out of Chambrun's forty-seven and one-half per cent. in it, to which the plaintiff had so far become entitled, and the settlement of the rights and priorities of other parties having similar claims against this proportion of the property. For this purpose the other claimants were made parties to the action; and so was the defendant Campbell, who further claimed to be entitled to compensation for services performed by him, for the heirs themselves, in the course of the partition litigation and other proceedings. The property remained in this condition until the 3d of April, 1888, but before the decision of the referee, which was on the 7th of May, 1888, a judgment had been recovered in an action commenced by Jean Albert Tauziede and another, for the sale of this property, and the sale of it was finally made under that judgment, by the trustee, in April, 1888; and a proportionate share of the proceeds of the sale has, in accordance with the determination of the referee, and the judgment entered upon it, been directed to be paid over to the plaintiff in this action. And, to that extent, the

judgment appears to have been authorized by these agreements, and the proceedings which had been taken to enforce the title of the heirs.

The right of the different claimants to be brought in as parties to this action has been resisted on behalf of the heirs, and the case recently decided of Smith v. Hilton has been presented as supporting this objection. But that case supplies no foundation for the objection, for there the grounds of relief brought into the action on behalf of the defendants, by their answers, were not only subversive of the plaintiff's action, but were without the jurisdiction of this court, and they neither grew out of, nor were they in any manner connected with, the subject-matter upon which the action had been made to depend. While, in this case, the other parties who have been brought in as defendants in this action, represent demands upon this forty-seven and one-half per cent. of the property and proceeds acquired under Chambrun's agreement, and between some of the claimants, conflicting equities existed, requiring to be settled before a distribution of the fund could be made. And, where that is the subject affected by a litigation in a court of equity, all the parties to it are required to be brought before the court for the adjustment of their interests before a sale of the property, or distribution of its proceeds, will be directed by a judgment. As much as that is necessary for the protection of the owner of the interest to be affected, and also for the benefit and security of the persons found entitled to participate in the distribution of the proceeds.

This is a familiar principle, often enforced and applied in courts of equity, and within its ordinary and acknowledged bounds, this case appears to be included. It was an essential step for its complete determination, that these different claimants should be brought into the litigation, and their rights litigated and determined by the judgment finally to be recovered, and that has been done, and regularly done by the proceedings which have resulted in this judgment.

A prior right in this forty-seven and one-half per cent. to that represented by the plaintiff, had been created in favor of Stanislaus Le Vourgeois. By the agreement between Chambrun and himself, which was made in July, 1876, Chambrun transferred, out of his forty-seven and one-half per cent., seven and one-half per cent. to him, in consideration of services rendered, in discovering and ascertaining these heirs, and in settling with them, in advance, and in the absence of Chambrun, the basis of the contract of April, 1876. This was a direct transfer to Le Vourgeois of the seven and one-half per cent. mentioned in the agreement; and it was entitled to be protected as it was by the judgment, under the authorities which have already been mentioned.

On the 4th of October, 1876, Chambrun made another agreement with Levi A. Chatfield, for whose services performed and to be performed, and for information communicated, in reference to the interests of the legal heirs of Jumel, relating to this estate, Chambrun agreed to pay to him, the sum of $1,000 in cash, within ten days after the date of the agreement; and he further agreed to pay to Chatfield the sum of $45,000 when the title of the heirs of Jumel should be established to the property, of which he died seized in the city of New York, either by suit or compromise, and, in case less than the whole amount of property should be recovered, or the rights of the heirs thereto should be compromised for less than the whole amount, then to pay to Chatfield a *pro rata* amount of this sum, and for his security, Chambrun mortgaged and pledged his share and interest in the estate, secured to him by the contract of April, 1876.

It was further agreed, that if no part of the estate should be recovered by suit or compromise, then no part of the $45,000 should be paid to Chatfield. As the adjustment was finally made, through the intervention of the settlement, Chatfield's proportionate part of the proceeds realized from the final sale of the property was the sum of $11,051.80,

and that was allowed to Douglas Campbell, as his assignee, by the referee. It was no objection to this allowance that Chatfield was secured in his right to payment by a mortgage upon the interest of Chambrun ; for a mortgage of a claim of this description was, of itself, a transfer so far of the title to the property, subject only to be defeated by the payment of the debt itself (Parshall *v.* Eggert, 54 N. Y. 18, 23), and for its preservation and protection, it was not required that the agreement should be filed, for the statute requiring the filing of a chattel mortgage, to preserve its validity, includes only such instruments as shall be given upon goods and chattels (3 R. S. [6th ed.], 143, § 9), and the interest in this manor mortgage was not property of that description.

The referee allowed interest on this sum, in favor of Chatfield's assignee, from the 4th of April, 1883, which was the date of the last adjustment or acquisition of property, in favor of these heirs. From that time, this proportionate part of the debt became payable, and the assignee of the creditor was, on account of that circumstance, entitled to this allowance of interest upon it.

A similar claim was allowed in favor of G. J. Schermerhorn, under an agreement made by Chambrun with him on the 25th of October, 1876. By this agreement Chambrun agreed to pay him the sum of $10,000 when the title of the heirs should be established to the property, or any part thereof, either by suit or compromise, and by the first compromise, the title to a part of the property was conceded and established by the conveyance of the 28th of August, 1880. At that time this indebtedness became due and payable by the terms of the agreement, which was valid within the rules mentioned in the authorities last referred to. And, for that reason, this creditor was entitled to interest on this sum of money from the time of its allowance, on the 28th of June, 1880.

The referee also allowed, and that has been sanctioned by

the judgment to Harriet E. Griswold, as the assignee of her husband, William N. Griswold, two and one-half per cent. of the net proceeds of the whole property. This, of course, is payable out of Chambrun's forty-seven and one-half per cent., and, a distinct assignment, to the extent of five per cent., was made by him to Griswold, and afterwards transferred to the person in whose favor it was allowed. In making the allowance the referee has not transcended the extent of the obligation or assignment made by Chambrun. It was restricted to two and one-half per cent. of the net proceeds of the whole property, being the equivalent, certainly, of no more than was transferred by the assignment to Griswold.

The one and one-third per cent. assigned to Jesse C. Connor, by Chambrun, was reduced, by agreement, to $2,000, and, as to that, there seems to be room for not even the slightest objection.

Neither can there be to the ten per cent. allowed to Margaret J. Smith, as executrix of her husband's estate, forasmuch as that was absolutely assigned to him by the agreement of the 25th of January, 1877, she had become obligated to give to the defendant, Campbell, a contingent advantage, after the payment to her of the sum of $25,000, with interest from the 6th of May, 1882, out of this amount, and that was fully provided for by the referee, and the judgment entered by the direction of the court upon his report.

A further allowance was made to George J. Schermerhorn of $30,000, with interest from the 28th of August, 1880. This has been specially resisted, not only by the heirs, but in favor of Frances A. Gesner, an immediately succeeding creditor. This resistance has proceeded upon the form of the agreement made between Chambrun and Schermerhorn for the payment of this sum of money. That agreement is in these words :

"It is hereby stipulated and agreed by and between Charles Adolphe de Chambrun, as attorney in fact of the heirs at law and next of kin of Stephen Jumel, deceased, late of the city of New York, and George J. Schermerhorn, attorney-at-law, of the city of New York, that in consideration of the services rendered by said Schermerhorn, at the request of said Chambrun, and in behalf of said heirs at law and next of kin of said Stephen Jumel, in litigations involving the title to premises in the city of New York, at one time owned by said Stephen Jumel, said Chambrun agrees to pay said Schermerhorn the sum of thirty thousand ($30,000) dollars, and such sum of $30,000 is hereby made a lien upon any moneys or property which said Chambrun may receive for said heirs at law and next of kin as aforesaid. It is further agreed that this agreement shall bind the heirs, executors, administrators, successors and assigns of the respective parties hereto.

"In witness whereof, the above-named parties have hereunto set their names and seals, at the city of New York, this 28th day of August, 1880.

"CHARLES ADOLPHE DE CHAMBRUN   [L. S.]
"GEORGE J. SCHERMERHORN.          [L. S.]
"In the presence of W. R. Beach."

It has been urged, for the purpose of securing the exclusion of this allowance, that the agreement made was between Schermerhorn and the heirs of this estate, and the language which has been employed in making the agreement lends at least colorable support to this position. But it is to be remembered that Chambrun, by the agreement of the heirs with him, had no power or authority to charge the fifty-two and one-half per cent of the heirs of the estate, with this obligation. As to their interest, he had no power whatever to dispose of it or hypothecate it in any manner, and that authority having been carefully excluded by the agreement with him, it is not to be supposed that he in-

tended by this agreement to charge or affect that interest. It was not carefully drawn, but it is to be construed, in view of the circumstances existing at the time when it was made.

Schermerhorn was employed by Chambrun to render his services as an attorney in the litigation brought for the recovery of the property; and he did devote his services to that end, and this money was payable to him for such services performed by him.

And in the execution of the agreement it was not executed by Chambrun in the name of the heirs, but solely for himself. It was his agreement, and it was so stated in its concluding clause, by which it was made to bind the heirs, executors, administrators, successors and assigns of the respective parties. Neither of the heirs was a party to this agreement, but it was wholly between Chambrun and Schermerhorn; and the reference contained in it to the services of the latter having been performed at the request of Chambrun, in behalf of the heirs at law, it is no more than was justified by the agreement between them and Chambrun, for the services of persons employed in the litigation were to be rendered for them at the request and through the employment of Chambrun. And those were the services intended to be compensated for by this agreement, and Chambrun himself agreed to pay Schermerhorn this sum of money for them, and made it a lien upon any money or property which he might receive for these heirs and next of kin.

It was, as the circumstances required it to be construed, an agreement by Chambrun to pay the sum out of the proportionate part which he might receive as the successful result of the litigation, and that bound his interest, but not the interest of these heirs and next of kin, and rendered that interest so far liable to the payment of this sum of money. But the referee added interest to the $30,000 from the 28th day of August, 1880, which was the day of the

date, and the making of the agreement. This addition appears to be unjustified by the language of the agreement itself.

For, the $30,000, so far as it was made to affect the property, was made payable only out of the moneys or property which Chambrun should receive. Until he received money or property, out of which this sum could be paid, or realized, the demand itself did not mature against it into an exactable indebtedness; and nothing was received by Chambrun out of which the $30,000 could be paid, certainly before the sale made in April, 1888. For the conveyances made upon the adjustments with the persons who were defendants in the litigation instituted by the heirs, were directly made to them, and that made by the referee in January, 1884, pursuant to the sale in partition was made to Elliott, the trustee, and vested the title to the property in him to the time when the sale was made, on the 3d of April, 1888. There were exceptional sums of money received by Chambrun from the disposition of small parcels of the estate, but as to the larger, or $15,000, it was divided between himself and the heirs, and in the proportions stipulated for by their agreement; and the residue of another sum received by him has been directed to be appropriated to the payment of costs. And these, if they had been unappropriated, would have applied to          demands than this $30,000. There was, accordingly, no money, or property, received or realized by Chambrun for the payment of this sum of $30,000, or which he could receive, or realize before the 3d of April, 1888, and for that reason, the allowance of interest upon this sum of $30,000 should be restricted to that time, and, in that respect, the judgment accordingly modified.

The amount of $10,525.18, with interest, allowed to Frances A. Gesner, was supported by the assignments made by Chambrun. He expressly assigned to her all his right, title and interest in, and to all the fees, and to such money,

or moneys, as should become due to him for services or compensation in the action in the circuit court of the United States, and also all his right, title and interest to all moneys due to him for services or compensation under any settlement made with any or all of the defendants in the action; and the second assignment, afterwards made by him to her, upon the removal of the note, was equally as effectual.

The residue of the money, consisting of the sum of $25,-000, directed to be paid to the defendant, Douglas Campbell, was authorized by the agreement entered into between himself and the widow of E. Delafield Smith.   The right to this money was acquired through agreements made by Chambrun, but it is not anticipated by the parties that any substantial sum will be realized upon it after paying the preceding sums of money chargeable to this forty-seven and one-half per cent.   Accordingly, no special attention is required to be devoted to this final item, the payment, however, of which seems to have been correctly allowed by the referee upon the trial.

It has been objected also that the referee erroneously allowed these claims, for the reason that the right or title of the Jumel heirs to this estate was at no time established in the litigation brought for the recovery of the property. But, while the language of the contract refers to that as the event upon which Chambrun should become entitled to the forty-seven and one-half per cent., it is clear, from the power of attorney simultaneously given, that so strict a construction of the language employed would not be justified.   For, by this power of attorney, he was fully authorized in the proceedings which might be taken by him for the recovery of the property, to negotiate, compromise and give effect to, and carry out all compromises he might make, and to enter into any amicable arrangements.

These instruments were executed at the same time between the same parties, and they are required to be considered and construed together to ascertain and determine the signifi-

cance of the language employed in making the agreement itself. Even if that which they have used, standing by itself, should be held to be expressive of the fact that a technical recovery should be secured to entitle Chambrun to this proportionate part of the estate, it is not to be literally followed, as long as it appears by the power of attorney itself that the parties intended Chambrun to be vested with the power to compromise the litigation, and obtain for himself and the heirs whatever might be secured in that manner.

In providing for the fund out of which these several sums of money should be paid, the referee held and determined that the creditors having these several rights in it, were entitled to resort for their satisfaction to forty-seven and one-half per cent. of the amount finally realized in April, 1888, upon the sale of the property. He was asked to determine that the utmost extent of the right of Chambrun in the property was forty-seven and one-half per cent. of the value of it at the time when it was conveyed by the referee, after the sale made in partition. Its value was then the sum of $152,-525.43, while, at the time of the sale in 1888, the proceeds realized from the property exceeds the sum of $340,000. The referee held the creditors, as well as Chambrun, to be entitled to forty-seven and one-half per cent. of this latter sum, giving them the benefit of the proportionate appreciation in the property, while it was held by Elliott as trustee, under the powers of attorney given to him, and the conveyances made by the referee who sold the property under the judgment in the partition suit. If the property had been divided, setting off to Chambrun forty-seven and one-half per cent., and to the heirs fifty-two and one-half per cent., at the time when it was conveyed by the referee to the trustee, then both Chambrun, and the persons claiming under him, would clearly have been limited to forty-seven and one-half per cent. of its value at that time. But no such conveyance was made; neither was the property separated or divided in any manner, but it was retained and held by the trustee

precisely as it was conveyed to him, until the sale made on the 3d of April, 1888. While it was so held, the share or interest of Chambrun was equally vested in the trustee with that of the heirs themselves. And a proportionate part of this increase in value was the increase of the forty-seven and one-half per cent. If that proportion had been conveyed to Chambrun, by the referee in the partition, and it had been held by him until 1888, this proportionate part of the increase would clearly have become his property, out of which his creditors would be entitled to the proportionate amounts assigned or transferred to them by him.

And it surely was no less so, because of the simple fact that the property remained undivided and wholly vested in Elliott, the trustee, for he held it in trust, in the proportions in which it was to be divided and distributed between these parties. For the heirs, he held the proportion of fifty-two and one-half per cent. For Chambrun and the claimants under him, forty-seven and one-half per cent. And the appreciations in these several proportions of the estate were the result of the holding of these respective proportionate titles. So far as the increase or enhancement in value was secured, it resulted to the extent of forty-seven and one-half per cent from the title and interest of Chambrun in it, and to that he, and the persons claiming under him, were clearly entitled to the benefit. To limit him and those whose titles were subordinate to his, to the value of the property at the time when it was conveyed by the referee, would be to give the increase resulting from this forty-seven and one-half per cent. to the heirs themselves, which would be more than they were entitled to under the agreement they made with Chambrun. What that entitled them to was fifty-two and one-half per cent. over expenses, and the enhancement in the value of that fifty-two and one-half per cent. representing their interest in the estate, arose out of and followed that proportionate ownership. But it did not draw to itself, or in any manner entitle them to the

proportionate increase of the forty-seven and one-half per cent. belonging to Chambrun and the persons claiming under him, by virtue of the contract originally made between himself and the heirs. In this respect, the case differs from the decision which was made in January last, in the Case of Hynes. There, the property depreciated in value, while it was retained by the party in whom the titled was vested, and the attorney was still considered to be entitled to the stipulated one-third of the amount realized of the valuation at the time when the property was recovered.

There the depreciation resulted from the delay of the persons holding the title to sell and dispose of it, and from no fault whatever of the person entitled to receive the one-third, and there was, accordingly, no reason why the amount payable to him should be reduced below the contract which had been entered into with him, simply because the property had fallen in value after the time when he became entitled to receive his stipulated compensation.

Here there was no such result. But, on the other hand, it was favorable to the parties interested in this estate ; and the enhancement in value of the forty-seven and one-half per cent. of it, was as much the property of Chambrun, as the forty-seven and one-half per cent. itself of the property conveyed by the referee to Elliott, because the advancement in the value of the property, so far as it was allowed by the referee, was the profit or advancement on this forty-seven and one-half per cent. to which Chambrun himself had become entitled.

Upon this part of the case the referee determined no more in favor of these parties than they were entitled to secure by the agreement, and the effect of the subsequent transactions. There was allowed to the defendant, Douglas Campbell, $7,875, by way of compensation for services performed by him for the heirs themselves in the partition suit and other proceedings.

He was employed to render these services under the

12

written authority of the heirs. The services were no part of those which Chambrun was required to provide for, by the agreements between himself and the heirs. They related to the property after it had been secured and conveyed to the heirs, and were necessary for the protection and maintenance of their rights. And the referee acted upon proof which must be assumed, as it has not been inserted in the case, but omitted therefrom by arrangement, and held to have been sufficient to justify this allowance.

The amount has been declared to be a lien upon the interest of the heirs in this property, and payable out of their fifty-two and one-half per cent.

This decision of the referee has been resisted as unsound by the counsel for the appellants, who has asserted the law to be that in the absence of an express agreement, it is well settled in this state that an attorney has no lien upon the cause of action of his client for his services.

Upon this subject the counsel has fallen into a significant mistake by overlooking section 66 of the Code of Civil Procedure, which has declared that, " From the commencement of an action, or the service of an answer, containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action, or counterclaim, which attaches to a verdict, report, decision or judgment in his client's favor, and the proceeds thereon in whosesoever hands they may come." This enactment, so far, supplied complete authority for this part of the determination of the referee, and of the judgment which follows his report.

No other objections have been made by these heirs which require any separate or special consideration, than those to which attention has already been devoted, and it follows, from what has been said, and the authorities to which reference has been made, that the judgment, with the exception of the interest allowed to Schermerhorn under his contract of August 28th, 1880, is substantially warranted

by the facts which have been proved and found in the case.

As to the interest allowed to him on the $30,000, as no agreement for its payment was made, no authority for it appears to have existed. To that extent the judgment should be modified, allowing to Schermerhorn, under this agreement, out of the proceeds of Chambrun arising upon the sale of the property, this sum of $30,000, with interest only from the 3d of April, 1888, which was the earliest day that these proceeds were payable to Chambrun, or applicable to this demand. And, so modified, the judgment should be affirmed, without cost of the appeal to either of the parties.

VAN BRUNT, Ch. J., and BRADY, J., concur.