## W. A. Mays and Wife v. J. W. Sanders et al.

### Decided November 9, 1896.

Foreclosure—Release of Lien by Owner of Part of Notes.

Suit by M. and wife against S. and B. to recover on two notes given by S. and assumed by B. and to foreclose a vendor's lien on the land for which they were given. Previous to this suit K. & McC., intervenors therein, had, as attorneys for M., the plaintiff, sued for and recovered, from another party then holding them, possession of the notes, under an agreement that they were to have "one-half" of said notes in excess of the value of the land," which was estimated at $7000. Subsequently B., who had bought the land of S. and assumed payment of his notes, reconveyed it to M. in consideration of a release from liability on the notes, which were to be cancelled and surrendered, this agreement being made with notice of the interest acquired by intervenors in the notes. Held:

1. The effect of the contract was that intervenors acquired a half interest in the notes to the extent of the excess of their amount over $7000, and not such interest in the difference between their actual value and that of the land nor a right to demand of M. one-half the difference between their par value and the value of the land; and it was not error, in submitting special issues, to fail to require a finding as to the actual value of the notes or of the land. (P. 137.)

2. M. had no power to release the interest of intervenors, and his release, while it discharged his own interest and lien as to S. and B., neither abridged nor enlarged the rights of intervenors. (P. 138.)

3. Intervenors were entitled to recover of S. and B., primarily of the latter, one-half of the excess of the face value of the notes over $7000, including in such face value the ten per cent attorney's fee provided for by the notes, with foreclosure against all parties, and on sale M. should first be paid $7000 of the proceeds and the remainder should be divided between M. and the intervenors, the amount paid the latter to be credited on their judgment against S. and B. (P. 138.)

4. It was error to award intervenors a judgment for foreclosure of a lien for one-half the excess of the face value of the notes over $7000 upon an undivided four-fifteenths of the land,—an interest proportionate to their interest in the notes,—since this was in effect to make M. a guarantor of their interest. (P. 138.)

Error to Court of Civil Appeals for Fourth District in an appeal from. Dallas County.

The suit was brought by Mays and wife against Sanders and Bowser to recover on the notes mentioned in the opinion and foreclose a lien therefor. Kearby and McCoy intervened, claiming an interest in the notes. Upon findings of a jury, on special issues submitted to them, plaintiffs were denied a recovery and interveners had judgment against defendants for $5792.50, with foreclosure of lien against all parties upon a four-fifteenths undivided interest in the land. On appeal by Mays and wife the Court of Civil Appeals affirmed the judgment and appellants obtained writ of error.

*Field, Brown & Camp,* for plaintiffs in error.—The court erred in this:. That having determined to submit special issues, it did not submit all the issues in the case, for the reason that it failed to submit all the issues. raised by the pleadings and the proofs of the plaintiff, inasmuch as the plaintiff presented the issue that the notes in controversy were only valuable by reason of the fact that they were a lien on land, and that the maker and assumer were both insolvent, and that the land had de-

preciated 50 per cent since the notes were executed and that the interveners should be held to recover, if at all, pro rata according to the depreciated value of the land, and not according to the face value of the note, all of which issues were clearly presented by the pleadings and proofs of the plaintiff, but were not submitted to the jury in the special issues submitted by the court. 27 Texas, 191-406; 70 Texas, 355; 69 Texas, 126; 40 Texas, 249.

The Court erred in concluding that the interest of the interveners was fixed by the contract, when in fact their interest was dependent upon the value of the note at the time the note was collected, and the amount of their recovery had to be determined by a calculation to be made between the value of the note sued on when collected and the value of the property secured in the compromise with Peak. It was an issue presented by plaintiff in their pleadings and proofs that interveners by their contract could only recover one-half of the difference between the value of the Worth Peak property, and the value of the notes sued on. And that the value of the notes sued on was $11,700, and that the value of the Worth Peak property was $11,300, and the court submitted as an issue the value of the Worth Peak property, but failed to submit as an issue to the jury the value of the note sued on at the time of the institution of the suit by plaintiff.

The plaintiffs had an undoubted right to collect the notes. It was their property, even though the interveners had an interest in them, and if fees were to be collected they should have received them. The interveners did not collect the notes, nor assist in any way in their collection. By the judgment Saunders is dismissed from the case, and by the same judgment Kearby & McCoy are allowed attorney's fees for notes that they did not collect nor try to collect, and which fees are to be paid to them by the owners of the notes.

A party must be the legal or equitable holder or owner of the note to be authorized to collect it, and to obtain a judgment of foreclosure. The plaintiffs were the legal and equitable owners and holders of the notes, and were in court seeking a collection and foreclosure. The court should have permitted the plaintiffs to collect the notes and foreclose on all the land mortgaged to secure their payment and to pay over to interveners whatever interest it may be determined that they have in the notes in controversy. 15 Texas, 160; 29 Texas, 260; 60 Texas, 145; 68 Texas, 22.

*J. C. Muse,* for interveners.—2. The depreciated value of the land embraced in the Saunders note, in no event could become an issue. Upon the alternative issue of quantum meruit, the value of said land would only be a fact in determining the value of the services rendered. The sanity and mental capacity of Mays, and the validity of the contract with interveners, being affirmatively found, the value of the land embraced in the notes was immaterial. The issue of quantum meruit was submitted. If there was error in failing to submit as an issue, the value of said land, it

was harmless error, for that the recovery was upon the contract.   McKinney v. Nunn, 82 Texas, 50; De Caussey v. Baily, 57 Texas, 666, 669.

It is the duty of a court to construe, not to make contracts.  A recovery under a contract is not measured by the depreciation in value of the obligation or the security mentioned therein, unless so restricted by the terms of the contract.   The court did not err in fixing by the contract the measure of interveners' recovery, for that, under the terms thereof, they were the owners of one-half of said notes in excess of the value of the land received by Mays from Peak.   Menard v. Sydnor, 29 Texas, 262; Linch v. Paris, etc., Lumber Co., 80 Texas, 37.

There was no error in the court awarding to the interveners attorneys' fees upon their proportionate share of the notes, for that the ownership of such proportionate interest in the notes entitled them to the recovery of the proportionate attorneys' fees thereon.   The assignment is not sustained by the record, for that it discloses no exception sustained to interveners' claim for such attorneys' fees.   Neese v. Riley, 77 Texas, 350; Morrill v. Hoyt, 83 Texas, 59, 60.

There was no error in the judgment of foreclosure, for that it is decreed upon an undivided four-fifteenths of the land, the extent of interveners' interest in the notes.   Partition can properly be made between the purchaser and the plaintiffs; that issue may then arise; its proper solution may be presumed.   The plaintiffs had no interest in the notes to collect, and costs were properly decreed.   Interveners could not be required to entrust to plaintiffs the collection of their money.   Harris County v. Campbell, 68 Texas, 27; 1 Am. & Eng. Encycl. Law, 844.

GAINES, Chief Justice.—With their opinion in this case the Court of Civil Appeals have filed the following statement and conclusions of facts:

"This suit was instituted by the appellant, W. A. Mays, against the appellees, J. W. Sanders and D. W. Bowser, to recover on the notes described in our first conclusion of fact.   Mays in his petition declared the last note due under the terms of the contract by reason of the default in payment of the first.

"Sanders & Bowser plead a release from their obligation on the note by reason of the fact found in our third conclusion; and also, that Mays had elected to rescind the contract for the sale of the land for which the notes were given, by taking possession of the premises as his homestead before the institution of the suit.

"W. A. Mays and his wife, who joined him in the plea, plead in replication the mental incapacity of the former to make such release, and that it was procured by fraud and misrepresentations, and denied any intention of rescinding the sale; but averred that he only took possession of the premises for the purpose of preserving them.

"Kearby & McCoy, a law firm, composed of J. C. Kearby and J. M. McCoy, intervened claiming, by virtue of their contract set out in our fourth

conclusion of fact, an interest in the notes sued on and asked judgment thereon against Sanders and Bowser, and, as against Mays and wife, a foreclosure of the vendor's lien on the land for which they were executed.

"Bowser answered admitting interveners' interest in the notes and acknowledging his liability to them to the extent of such interest. Sanders failed to answer the petition of intervention.

"W. A. Mays in answer to interveners' claim plead that the contract under which it was asserted is inequitable, and the claim disproportionate in amount to the value of the services rendered, and that Mays was, when the contract was entered into, of such weak mind as to incapacitate him from entering into such contract; and further, that by the terms of the contract interveners were entitled to recover only one-half of the difference between the value of the Peak property and the value of the notes at the time the contract was made; that the value of the Peak property was then $11,300, and of the note sued on, $11,760—the difference in the value being $460, and that the interest of interveners, if any they have in the note, is only one-half of the sum last stated. That he, Mays, has the right to collect the notes and that the attorneys' fees are a legitimate expense attached to their collection, in which fees the interveners have no interest.

"Such facts as were not admitted in the pleadings of the respective parties against whom they were averred, were, in separate issues submitted to and found by the jury, as shown in our conclusions of fact.

"Upon the admitted facts and those found by the verdict, the court adjudged that interveners were entitled to four-fifteenths interest in the notes sued on, including the 10 per cent attorney's fee stipulated, which interest was computed to be $5792.50; for which amount a judgment was entered in their favor against J. W. Sanders and D. W. Bowser, with a foreclosure of the vendor's lien on an undivided four-fifteenths interest in the property for which the notes were given against Sanders, Bowser, Mays and wife. The court also adjudged that Sanders & Bowser were released from said notes by reason of the facts stated in our third conclusion to the extent of Mays' interest in them, and, as to such interest, decreed them cancelled. The court further adjudged that W. A. Mays acquired title to an undivided eleven-fifteenths of the land for which the notes were given, in consideration of his release of said notes, and that he was not entitled to recover anything in this suit against any of the parties, and that he pay all costs of suit.

"From this judgment Mays has appealed to this court.

"Conclusions of Fact.

"The following facts were admitted in the pleadings of the respective parties and are uncontroverted.

"1st. On December 18, 1890, J. W. Sanders executed to W. A. Mays his two promissory notes, one for $760, and the other for $14,000, payable respectively one and four years after date, with interest from the 27th of

August, 1890, at the rate of 8 per cent per annum. These notes were and recite that they were for a part of the purchase money of a certain tract of land, sold on the day of their date by the payee of the notes to the payor, and expressly reserve a vendor's lien to secure their payment. Contemporaneous with the execution of the notes Sanders executed to J. P. Murphy as trustee a deed of trust as further security for their payment, in which it was provided that in default of the payment of the first note upon its maturity the other at the option of the legal holder should become due, and also, in event the notes were placed in the hands of an attorney for collection, the maker should pay 10 per cent additional on the amount owing as attorney's fees.

"2nd. On the 15th day of May, 1891, J. W. Sanders and wife, by their deed of that date, sold the land for which the notes were given to D. W. Bowser; which deed recites a consideration of $26,000—$11,240 cash, and the assumption by the grantee of the payment of the notes sued on. It also recites the retention of a vendor's lien to secure the payment of the purchase money.

"3rd. On the 9th day of November, 1893, D. W. Bowser executed to W. A. Mays a deed whereby, in consideration of the written covenant of that date, executed by Mays, releasing Bowser from all liability on the two notes he had assumed to pay, and agreeing to cancel, surrender and discharge said notes and to hold Bowser harmless against any further liability thereon, he quit-claimed to Mays the land for which the notes were given.

"4th. In July, 1891, Worth Peak, in some sort of trade with W. A. Mays, obtained from him the two Sanders notes, and Mays, conceiving himself overreached in the trade, retained Kearby & McCoy, interveners, to institute legal proceedings for the recovery of the notes, and with them entered into and signed the following contract:

" 'This agreement between W. A. Mays and his wife, T. C. Mays, and Kearby & McCoy, is that Mays and wife have employed said Kearby & McCoy to bring and prosecute to final judgment suit No. 9154, W. A. Mays et al. v. Worth Peak et al., in the Fourteenth Judicial District Court. In consideration of the services of Kearby & McCoy in said suit, W. A. Mays and wife hereby transfer to them one-half of any and all sums, notes and property recovered by said suit over and above the property received by us from said Peak. That is to say, said property received by us from said Peak, is of the supposed value of from five to seven thousand dollars, this suit is brought to recover fourteen thousand, seven hundred and·sixty dollars, on a note signed by J. W. Sanders. If we recover in said suit said note, then we hereby transfer to Kearby & McCoy one-half of said notes in excess of the value of said land, to-wit: From five to seven thousand dollars; and if the said Kearby & McCoy fail to recover said note, or any sum in excess of said land received by said W. A. Mays from said Peak, then it is understood that said Kearby & McCoy are to receive nothing for their said services, but if they do recover in said suit, then they

are to have one-half of all recovered, in excess of said land by Peak to Mays or its value.' Under this contract, of which D. W. Bowser had notice before and when he obtained Mays' release, the possession of the notes was recovered by legal proceedings instituted by the interveners against Peak.

"The following facts were found by the jury upon special issues submitted by the court; and are warranted by the evidence, viz:

"5th. When the contracts were made between Mays and interveners, set out in our fourth conclusion, and between Mays and Bowser, set out in our third, he, Mays, was mentally capable of making such contracts, and they were not obtained from him by fraud.

"6th. The reasonable value of the property received by Mays from Peak, referred to in the contract between Mays and Kearby & McCoy, was, at the date of the contract, $7000.

"7th. Mays took possession of the land for which the notes were given before the execution of the release to Bowser, without his consent, with the intention of making it his homestead; and he is not in a condition to restore Bowser the consideration received from him for the release. Bowser was, when the release was executed, insolvent."

We are of opinion that the Court of Civil Appeals correctly disposed of all the appellants' assignments of error in that court, except such as question the propriety of the relief granted to the interveners.

A leading contention on part of the plaintiffs in error is that the court, in submitting special issues to the jury, erred in not submitting an issue as to the value of the notes recovered of Peak. The failure to submit to the jury any material question of fact made by the pleadings in a case vitiates a verdict upon special issues; but we think the Court of Civil Appeals correctly held that the value of the notes was not a fact material to a determination of the case. The contention of plaintiffs in error is based upon the theory that the interveners were only entitled to one-half of the difference in value between the property recovered of Peak and the land which was restored to him as a result of that recovery. This is not the correct construction of the contract. The whole tenor of the instrument is that they were to have an interest in whatever was recovered, provided it exceeded in value the Peak land. The contract contains this stipulation: "If we recover in said suit said note, we hereby transfer to Kearby & McCoy one-half of said notes in excess of the value of said land," etc. The notes were recovered and therefore they had an interest in the notes themselves. If this had been a suit against Mays for their conversion, then, in order to ascertain the value of the interveners' interest, it would have been necessary to determine their value. But it was a suit upon the notes themselves, in which Kearby & McCoy intervened, claiming an interest and asking a judgment therefor.

But while we think that the trial court did not err in failing to submit an issue as to the value of the notes, we are of opinion that it did err as to the relief granted upon the facts admitted by the pleadings and those

found by the jury. That court seems to have proceeded upon a misconception of the rights of the parties. As we have attempted to show, the contract simply transferred to the interveners an interest in the notes. It did not give them the right to demand of Mays one-half of the difference between their par value and the value of the Peak land. To give them a decree upon this latter theory practically results in making Mays a guarantor of the notes; and this result is not justified by the terms of the agreement.

The interveners proceed upon the idea that they had acquired a fixed interest in the notes, and that Mays had no power to release that interest. That is correct. Mays' release of Bowser, while it discharged his own interest as to Bowser, and as a consequence as to Sanders also, did not affect the interest of the interveners. Their rights remained the same as if no release had been made. While the release did not abridge their rights, it did not enlarge them. If the jury had found that no valid release had been executed by Mays, then a proper judgment would have been for a recovery on the notes against Sanders and Bowser, in favor of Mays and the interveners—that the land should be sold for the discharge of the judgment, and that from the proceeds of the sale Mays should be first paid $7000—the value of the Peak land as found by the jury—and that the balance, if any, should be equally divided between the plaintiff and the interveners; or, that after paying plaintiff $7000 out of the proceeds of the judgment, he and interveners should have equal interests in the balance. But the jury having found the release valid, while Mays is not entitled to any judgment against either Sanders or Bowser, interveners have the right to proceed against the land in his hands, just as if it had remained the property of Bowser. The decree of the court should simply have assessed the amount due upon the notes, should then have ordered the land to be sold for the discharge of the sum so assessed, and that from the proceeds Mays should be first paid $7000, and that the balance, if any, should be paid one-half to plaintiff and the other half to interveners. The interveners were also entitled to a judgment against Sanders and Bowser for one-half the balance due on the notes after deducting the $7000. As between Sanders and Bowser, the latter is primarily liable for the payment of this judgment. One-half of the excess, if any, of the proceeds of sale of land over $7000 should be credited upon the judgment in favor of Kearby & McCoy against Sanders and Bowser.

The other assignments of error, as we have said, were correctly determined and are not of sufficient importance to require additional comment.

The judgments of the District Court and of the Court of Civil Appeals are reformed in accordance with this opinion, and as reformed are affirmed. The costs of the appeal and of the writ of error are adjudged one-half against the plaintiffs in error and one-half against Kearby & McCoy.

                                        *Reformed and affirmed.*