This action was originally brought by the plaintiff against R. A. Wheeler individually. He was never sued as secretary and treasurer of plaintiff corporation. The complaint alleged that R. A. Wheeler was indebted to the plaintiff in a large sum of *Page 491 
money, both on account of unpaid subscription to capital stock and money of the company, which he had as former secretary and treasurer received and not properly accounted for. It is alleged that prior to the beginning of the action, to wit, on 2 September, 1915, Wheeler had been suspended as secretary and treasurer by action of the stock holders and the board of directors, who had elected B. H. Bradener to that office, in place of the defendant. The cause was referred to S. Clay Williams, Esq., who tried the same as referee, and reported that the defendant was indebted to the plaintiff in the sum of $1,687.06, and the further sum of $550, making $2,237.06, which the plaintiff was entitled to recover of the defendant.
Messrs. R. C. Strudwick and John A. Barringer appeared as attorneys for the plaintiff in the action, and until the judgment was rendered on the referee's report, intervened in this action to establish their right to compensation as attorneys. They were duly retained as such by the Casket Company, and were paid a retainer of fifty dollars, the company further agreeing that they should have as compensation for their services "one-third of any recovery that might be effected in the action against the defendant." The said terms of employment were accepted by the attorneys, and they represented the plaintiff and prosecuted the action throughout the litigation for their client, and recovered judgment in the sum above indicated in the referee's report. The controversy was long continued and hotly contested, and there seems to be no reason to dispute the reasonableness of the compensation promised to the attorneys. (461) The latter intervened in the principal action for the purpose of enforcing the allotment to them of one-third of the judgment recovered by the plaintiff with their professional assistance according to the contract, contending that they were entitled to the relief and to the lien on the defendant's land, which, under our statute, goes with the judgment. The petition of intervention was duly served, with a copy thereof, on the plaintiff, but not answered.
The defendant filed one exception to the report, and pending the confirmation of the same took action, as described in the petition, with a view of depriving interveners of their compensation by acquiring control of the plaintiff corporation. The defendant, in open court, withdrew his exception to the report of the referee, which was confirmed.
The interveners then filed their petition of intervention, and the court rendered judgment as follows:
"It is further ordered, adjudged and decreed by the court that the plaintiff do have and recover of the defendant in accordance with said report the sum of $1,687.06, and the further sum of $550, with interest on $550 from 8 January, 1917, until paid. It further *Page 492 
appears to the court that John A. Barringer and R. C. Strudwick, attorneys at law, by leave of the court, have filed in this cause a verified intervening petition whereby they claim to be equitable assignees of one-third of said judgment, and that they are entitled to be paid one-third thereof; that the said petition has been duly served upon the defendant and upon C. C. Prince, now president of the High Point Casket Company, and that no answer thereto has been filed, the court doth find that all allegations of said petition are true. The court doth find, and thereupon order and decree, that by virtue of the agreement made by the plaintiff, said John A. Barringer and R. C. Strudwick, attorneys, are entitled to receive one-third of the amount recovered against the defendant, and that by virtue of the terms of their employment as aforesaid, they are the equitable assignees of one-third of said judgment against the defendant.
"It is further ordered and adjudged by the court that John A. Barringer and R. C. Strudwick, attorneys, be paid one-third of the amount of said judgment, and judgment is hereby rendered as to the one-third of the amount thereof in favor of said John A. Barringer and R. C. Strudwick against the defendant R. A. Wheeler.
"It is further ordered and adjudged by the court that the defendant pay the costs of this action to be taxed by the clerk, including an allowance of two hundred and fifty dollars to S. Clay Williams, Esq., referee."
Defendant appealed.
What real interest the defendant has in this controversy we are unable to see. He has to pay the judgment, in any event, and whether to the plaintiff, or one-third of it to the interveners, Messrs. Barringer and Strudwick, the attorneys of the plaintiff, can make no difference to him. A case directly in point is Newsom v. Russell, 77 N.C. 277, where the plaintiff was the assignee of the note on which the action was brought, and defendant alleged that it was assigned in fraud of the assignor's creditors, the Court held this to be no defense, as the assignor was bound by his assignment, though made in fraud of his creditors, and then the Court inquired, "It is not the duty of the maker of the note to see to the application of the money, and it is even less his duty to fight the battles of the bankrupt's creditors. What interest is it to him (defendant) if he is absolved from further liability by payment of his *Page 493 
debt upon a judgment regularly obtained against him?" Here the parties are all before the court and will be concluded by its judgment. The petition of intervention was filed in the case and copies of it duly served on the plaintiff and the defendant, who failed to answer it or otherwise plead to it, and the court gave judgment by default against them. This fully protects defendant in any payment he makes under the judgment of the court. And Brown v. Harding. 170 N.C. 253, 262 (S.C., 171 N.C. 689), is to the same effect as Newsom v. Russell, supra. But see, also, Wiggin v. Sweet, 6 Metcalf (Mass.) 194 (S. c., 39 Am. Dec. Extra Anno. 716); Black v. Kirgan, 28 Am. Dec., Extra Anno. 394; 6 Cyc. 631. The party of record who can complain of a judgment of a court, and appeal therefrom, is one who is aggrieved thereby, in the sense that his pecuniary interest is affected by it; one whose right of property, or interest, may be established or divested by the decree, as was said substantially by Chief Justice Shaw inWiggin v. Sweet, supra, citing Smith v. Bradstreet, 16 Pick. (Mass.) 264;Bryant v. Allen, 6 N.H. 116. But however this may be, we are of opinion that the judgment of the court was right in itself.
There can be no question as to the definite terms of this contract for compensation of the attorneys, nor as to how it should be ascertained and secured, nor can it be reasonably doubted that the parties intended that they should receive a certain or fixed portion of the judgment recovered. The contract therefore constituted, at least, an equitable assignment of the judgment pro tanto. It was held inCostigan v. Stewart, 91 Pac. Rep. (Kansas) 83 (S. c., 11 L.R.A., N.S. 630), that an attorney, who is retained to conduct or to assist in conducting the prosecution of a proceeding under a contract by which he is to receive compensation out of the fund recovered, is entitled to a lien upon such fund for his fees. And (463) so in Svea Assurance Co. v. Packham, 92 Md. 464, at 477 and 478, the Court said that there was no evidence to show that the amount defendant agreed to allow the attorneys was unreasonable or excessive. Cases of that character are generally defended by all the means the law affords. They often result in several trials and usually the receipt of the compensation is greatly delayed, when taken on a contingency. If the case is settled before it has taken its usual course, the attorney is undoubtedly benefited thereby, but the client is saved the necessity, and oftentimes hardship, of paying out cash, and has no personal liability for fees in the event of failure. Under such circumstances he must expect to, and usually does, give larger compensation, if successful, than he would if he agreed to pay a fixed fee, whether successful or not. When Mr. *Page 494 
Packham made the arrangement for fees the insurers had not paid the insurance money, and when they did, they knew what he had agreed to allow. Yet they stood by without objecting to it, and permitted the attorneys thus employed by Mr. Packham to proceed, knowing the terms of their employment. The case of Davis et al. v.Gemmell et al., 73 Md. 530, is a conclusive answer to such objection by them now. There the attorneys were employed upon a contingent fee by Mr. Brydon, who had sued in his own name and recovered a judgment which was determined to belong to the North Branch Coal Company. Some of the stockholders objected to the allowance of the fee, but this Court said they "stood by and saw the work done — they neither interfered nor objected — and they cannot now be heard in a court of equity to except to that work being paid for out of the fund realized by the labor of these gentlemen, especially when they themselves (the exceptants) are seeking to reap the benefit of that very work and labor. Without citing other authorities on that subject, we are of the opinion that it would be inequitable to deprive the attorneys of the fees agreed to be allowed. See, also, note to theCostigan case, supra. It is said in 4 Cyc. 989, 990, and notes: While the law will scrutinize such transaction closely, an agreement is not necessarily invalid because the payment of the fee is made contingent upon the success of the suit or upon the happening of some other event, and such an agreement is not objectionable for want of mutuality. So, a contingent agreement to convey a portion of the land recovered by suit to the attorney for his fee will be specifically enforced, even though the land has greatly increased in value. Where the claim is assignable, the wording of the agreement for a contingent fee must in every case be examined to determine whether the parties intended an equitable assignment in favor of the attorney.Fitzpatrick v. Lincoln Sav., etc., Co., 194 Pa. 544; Howardv. Throckmorton, 48 Cal. 482; Martin v. Platt, 5 N.Y. St. 284; Chester v. Jumel, 125 N.Y. 237, 25 N.Y. St. 4, 2 Silv. Sup. (464) (N.Y.) 159; 5 N.Y.S. 809. If the property has been converted into a fund, the attorney is entitled to his due share of the increased amount. Hand v. Savannah, etc., R. Co.,21 S.C. 162. Where the client repudiates his contract, the attorney may compel him to deliver so much of the proceeds recovered as will compensate him or may have a personal judgment for his damages sustained by reason of the client's failure to carry out his contract.Hazeltine v. Brockway, 26 Colo. 291. Similar agreements were held to constitute equitable assignments in favor of the attorneys in the following cases: Hoffman v. Vallejo, 45 Cal. 564; Sammis v. L'Engle,19 Fla. 800; Fairbanks v. Sargent, 104 N.Y. 108; Hagemann's *Page 495 Estate, 5 Pa. Co. Ct. 576; The Alice Strong, 57 F. 249 (distinguishingKendall v. U.S., 7 Wall (U.S.) 113, 19 L. Ed 85). A right of action is assignable in this State, but by assigning an aliquot part of the fund recovered, or the recovery, or judgment, as it may be denominated, the assignee gets no vested right in the cause of action, unless it is so stated or clearly to be implied. In this case the assignment is confined to the recovery or judgment itself. In 6 Corpus Juris, pp. 742, 743, it is stated that there are many cases which hold that an agreement with an attorney that he shall have as compensation a specific sum, or a stipulated percentage, to be paid out of the judgment recovered will, on the recovery of judgment, operate as an equitable assignment pro tanto; and this has been so held even where the action in which the judgment was obtained was on a cause of action for a tort in itself unassignable. But, in order that an agreement for a contingent fee may operate as an equitable assignment, there must be in effect a constructive appropriation of so much of the amount to be recovered as will confer upon the attorney a complete and present right to receive the same without the further intervention of the client. In some jurisdictions there must be an actual appropriation of some designated proportion or per cent of the judgment. In others it is not indispensable that the portion or amount of the fund sought to be assigned should be precisely ascertained and stated in the assignment. It is enough that the transaction affords evidence as to the part of the fund on which the assignment was intended to operate. Whether in a given case the agreement constitutes an equitable assignment is dependent upon the intent of the parties, as evidenced by the terms of the agreement, in the light of all the surrounding circumstances. See, also, Bennett v.Donovan, 82 N.Y.S. 506 (83 A.D. 95); Flannery v. Geiger,92 N.Y.S. 785; Mays v. Sanders, 90 Tex. 132[90 Tex. 132]. It was held in Martinez v. Succession of Adolphe Vives, 32 La. Ann. 305, that the contract of an attorney with his client to receive a contingent fee of ten per cent on the amount recovered is a valid contract. An attorney who is entitled to a certain commission on the amount recovered by him, which amount is evidenced by and embraced in a judgment, has a sufficient interest in the judgment (465) to sue for its full revival. Construing a contract between attorney and client similarly worded to this one, the Court held in Hoffman v. Vallejo, 45 Cal. 564, that it constituted the attorney the equitable owner of the undivided one-half of whatever shall result from the prosecution or compromise of the suit instituted by him to recover the land. If an attorney contracts with a party who claims land to commence a suit to recover the land and to pay *Page 496 
the expenses, and receive for his services and expenses one undivided half of what may be recovered, and the undivided one-half of the result of a settlement or compromise of the matter, and the party compromises by having money paid to a third person, who, in consideration of the money, deeds to a fourth person land in trust for the party, such fourth person holds an undivided one-half of the land in trust for the attorney. Considering a claim of like character in Fairbanks v. Sargent, 104 N.Y. 108 (S. c., 58 Am. Rep. 490) (opinion by Chief Justice Ruger), the Court held that an assignee of such a claim from the owner must necessarily acquire the same interest in it that any other assignee does, and that is, in the absence of other controlling equities, an interest subject to the rule that he who is prior in point of time is prior in right. Such a claim is at common law nonassignable, and its assignee takes, by virtue of an assignment thereof, an equitable interest only, which must be governed by equitable rules for its protection and enforcement. See, also, Schubert v. Heizberg, 65 Mo. App. 578; Williams v. Ingersol,89 N.Y. 508, and Patten v. Wilson, 34 Pa. 299, in which last case it was held that an agreement by parol between an attorney and client that the former should have one hundred dollars for his services "out of the verdict," in an action for unliquidated damages arising from a personal tort, operated as an equitable assignment of the judgment entered upon the verdict, and was good against an attaching creditor of the client. The Court thus answers the objection that, as the claim was for unliquidated damages in an action sounding in tort, it was not capable of assignment before judgment; strictly that is true. But it is true only in respect to the rights of third parties. As between Wolf and Geyer (client and lawyer) an assignment or agreement to assign the whole or part of a future verdict, would be binding, and, being founded on sufficient consideration, would be enforced. "Such agreements between counsel and client . . . bind the parties, and the attaching creditor of one of the parties succeeds to no higher rights than he possessed." Bell v. LakeCounty, 26 Colo. 192. And in Canty v. Latterner, 31 Minn. 239, the Court was of opinion that upon its face the contract is to be construed as an equitable assignment of the amount there referred to as due the respondent from the railroad company. It is expressed not merely as an obligation to pay upon the contingency (466) named, nor merely to pay out of the money to be collected by the respondent, but that the plaintiff should receive this money from the railroad company out of the amount owing by it to the respondent. It was in effect a constructive appropriation in favor of the plaintiff of so much of the money payable to the respondent, *Page 497 
subject only to the condition named, and was hence operative as an assignment, although not an assignment in form. There are very many cases collected in 6 Corpus Juris, at p. 741 and note 7, to the same effect as those we have cited, but they are to numerous to be inserted here. The annotator of the text says that in each of them there was a contract for a contingent fee, ranging in amount from one-tenth to one-half of the sum recovered; and the Court, finding upon examination that the contract was fair and the fee not excessive, gave effect to it and allowed the attorney to recover. It was held in the case of "The Alice Strong" (S. c.,Greenhalgh v. Same, 57 F. 249), that an assignment by the libelant in an admiralty case (who has reasonable assurance that he is entitled to recover a certain amount), of a definite sum to his proctor for professional services, to be paid out of any recovery that might be had, is sufficiently certain, and on sufficient consideration, to support a lien on the proceeds. The lien of such an assignment has priority over the claim of a judgment creditor in a state court, who subsequently files his intervening petition in admiralty, after the court has decided that libelant is entitled to recover some amount on his libel.
One reason for the rule thus formulated by the courts is based on the ground that otherwise a party, without the means to employ an attorney and pay his fee certain, and having a meritorious cause of action or defense, would find himself powerless to protect his rights. Newman v. Freitas,129 Cal. 283; Andirac v. Richardson, 125 La. 883.
This brings us to consider the validity of such a contract in another respect. The defendant attacks the same (in which, by the way, we have shown that he has no legal or moral interest or right), upon the ground that the relation of attorney and client is a fiduciary one, which raises a legal but rebuttable presumption of fraud, or of undue influence which is a species of fraud, and for this position he cites Lee v. Pearce, 68 N.C. 76, and we may add McLeod v.Bullard, 84 N.C. 515, 532, but if that principle be conceded to be the law, and we are not casting any doubt upon it, the evidence in this case establishes beyond cavil, that the attorneys, who were the interveners, acted in perfect good faith when the contract was made, and without fraud or the exercise of any undue influence, and that they took no advantage of the plaintiff in the transaction, and further that the compensation (one-third of the recovery) was just and reasonable. Besides, the allegations of the interveners, in their petition, are to the effect that there was no fraud or undue influence, and no bad faith, or unfair advantage taken by (467) *Page 498 
them of the plaintiff when the contract was made, but that, in all respects, the latter was fair and just, and the amount of compensation allowed was reasonable when the nature of the litigation and of the services to be rendered by them are considered, and these allegations were not denied, although the plaintiff and the defendant were duly served with copies of the petition and had full opportunity to be heard if they had any defense to it. It is neither a violation of law nor against good morals that a lawyer, if he believes a client or would-be client has been wronged, and is unable to employ counsel, to bring suit for the redress thereof, and to undertake the business without any hope or promise of reward, or upon a promise of reward contingent upon the result. Indeed, it is rather to be commended. Stevens v. Sheriff, 76 Kan. 124 (S.c., 11 L.R.A., N.S.), 1153. A contract for a contingent fee must be made in good faith, without suppression or reserve of fact or of apprehended difficulties, and without undue influence of any sort or degree; and the compensation bargained for must be absolutely just and fair, so that the transaction may be characterized throughout by all good faith to the client. If the contract is shown to have been obtained by fraud, mistake, or undue influence; or if it is so excessive in proportion to the services to be rendered as to be in fact oppressive or extortionate, it will not be upheld. Such a contract cannot be condemned solely because of the proportion of the claim to be retained by the attorney was very large, if it was deliberately entered into, was free from fraud, and showed no purpose to obtain undue advantage. Thus the mere fact that the attorney is to receive one-half of the recovery does not render the agreement unconscionable, in the absence of proof that it was induced by fraud, or that the compensation provided for is so excessive as to evince a purpose to obtain an improper or undue advantage, although there is said to be a presumption against the propriety of such a transaction. One very properly may demand a larger compensation if it is to be contingent, or not certain. A contingent fee is permitted to attorneys only as a reward for skill and diligence exercised in the prosecution of doubtful and litigated claims, and it is not allowed for the rendition of merely minor services which any layman or inexperienced attorney might perform. 6 Corpus Juris, Sec. 316 (pp. 740-741), and notes. The word "unjust or unconscionable," as applied to attorneys' contracts for contingent fees, means nothing more than that the amount of the fee contracted for, standing alone and unexplained, would be sufficient to show that an unfair advantage had been taken of the client, or that a legal fraud had been perpetrated upon him. McCoy v. Gas Engine Co.,135 A.D. 771 (119 N.Y.S. 864). *Page 499 
There is nothing in this case which even suggests that the contract was either unfair, improper, or excessive, or (468) that the interveners did anything, in their professional characters as attorneys, that was not fit for them to do under the facts and circumstances.
We need not discuss the question as to whether intervention is the proper method for the attorneys to prosecute their right to the compensation and obtain judgment therefor as they have done. That it is, is too plain for argument, and it will be found that it is the one which was adopted in the cases we have cited and many others. Under our Code, it is one of its cardinal rules, and of its most commendable provisions, that all controversies relating to the same matters should be settled in one action, and the intervention was the most convenient and appropriate method in this case, as one of its objects was to arrest any disposition of the fund to be collected under the judgment which would jeopardize or defeat the interveners' rights, which were about to be greatly prejudiced by the defendant's wrongful conduct, which is particularized and denounced in the petition as an attempt to subject the judgment to defendant's control, so that he might oust the interveners of their just and equitable rights. Whether the contract was, in effect, an assignment at law or in equity, need not be considered. It was not good at common law, as under it choses in action were not assignable, but even then it was valid in equity. Under our law choses in action are assignable, while at common law the rights and benefits of a contract, except in the case of the law merchant and in cases where the crown has an interest, could not be transferred by assignment, a doctrine which Lord Coke attributes to the "wisdom and policy of the founders of our law in discouraging maintenance and litigation, but which Sir Frederick Pollock tells us is better explained as a logical consequence of the archaic view of a contract as creating a strictly personal obligation between the debtor and creditor," the rule in its strictness was soon modified in practical application by the common-law courts themselves and more extensively by the decisions of the courts of equity; and the principles established by these cases have been sanctioned and extended by legislation until now it may be stated as a general rule that, unless expressly prohibited by statute or in contravention of some principle of public policy, all ordinary business contracts are assignable, and that actions for breach of the same can be maintained by the assignee in his own name. R. R. v. R. R., 147 N.C. 368-374. But it makes no difference whether we call the assignment legal or equitable, as in either case the result will be the same. *Page 500 
As we have held that by the term of the contract, the interveners acquire an interest of one-third in the judgment, which is what we call "the recovery," the lien of the judgment, under our statute (C.S. 614), attached pro tanto to the defendant's land from (469) the time the judgment was docketed. This is not, therefore, a simple common-law action to recover for services the amount stipulated to be paid, but is the definite appropriation of a special part of the judgment, or "recovery," with its attendant lien, as compensation to the attorneys under the contract. This seems to be a case of first impression in our courts, but we deem the law concerning it to be well-settled.
The question is treated at large in Weeks on Attorneys (Ed. of 1878), secs. 346, 350, and 352.
There may be some conflict in the authorities, but our view is well supported by a large majority of the later decisions in courts of the highest repute.
This case bears no resemblance to Mordecai v. Devereux, 74 N.C. 673, and Roe. v. Journigan, 181 N.C. 180, as there was no contract between attorney and client in those cases, and the Court was asked to allow compensation regardless of that fact.
Upon the whole case, when considered in any proper or admissible view, our conclusion is that there was no error in the judgment of the court below, as delivered by Judge Finley upon the report of the referee, and we therefore affirm the same.
Affirmed. Cited: Abernethy v. Godette, 183 N.C. 675; Trust Co. v. Williams,201 N.C. 466; Horne-Wilson Co. v. Wiggins Bros., 203 N.C. 88; In re Estateof Bost, 211 N.C. 443;In re Wallace, 212 N.C. 493; Crutchfield v. Foster,214 N.C. 553; Cadillac-Pontiac Co. v. Norburn, 230 N.C. 28.