Jack H. **POTTS** and H. Paul Averette, Jr., d/b/a Hamlin, Potts & Averette, Plaintiffs,

v.

Harold Eugene **MITCHELL** et al., Defendants.

Civ. No. A–75–78.

United States District Court, W. D. North Carolina, Asheville Division.

Feb. 23, 1976.

## MEMORANDUM OF DECISION

WOODROW WILSON JONES, Chief Judge.

The Plaintiffs, Jack H. Potts and H. Paul Averette, Jr., doing business as Hamlin, Potts and Averette, Attorneys at Law, instituted this civil action against the Defendants, Harold Eugene Mitchell, Ellis S. Rubin, and Canal Insurance Company, seeking monetary damages from the Defendant Mitchell for an alleged breach of contract, and from the Defendant Rubin for an alleged interference with such contract, and injunctive relief from the Defendant Canal Insurance Company. This Court's jurisdiction is invoked under the diversity of citizenship provisions of 28 U.S.C.A. 1332.

The Plaintiffs contend that the Defendant Mitchell employed the law firm of Hamlin, Potts and Averette on April 7, 1975, on a contingent fee basis to represent his family's interest in civil actions and claims arising out of the wrongful deaths of his wife and three children and the personal injuries to another child occurring on April 2, 1975 in Tifton, Georgia. The Plaintiffs further contend that the Defendant Rubin, a Florida attorney, wrongfully interfered with this contract of employment by causing Mitchell to retain him as counsel on April 14, 1975, and to dismiss the Plaintiffs as counsel by letter dated April 15, 1975. As a result of this alleged breach, the Plaintiffs contend that they are entitled to 25% of any settlement recovered from those liable to the Defendant Mitchell because of said accident, this being the contracted fee between Mitchell and the Plaintiffs. The Plaintiffs also seek exemplary damages against the Defendant Rubin for an alleged wrongful interference with the contract.

In Answer, Defendant Mitchell admits that he signed the agreement of April 7, 1975, but contends that he was unduly influenced at the time and unable to transact business because of the traumatic deaths of his wife and three children. The Defendant Rubin denies of-

Robert S. Cilley and V. Scott Peterson, Ramsey, White & Peterson, Brevard, N. C., for plaintiffs.

John M. Beauchamp, Albany, Ga., James H. Toms, Toms & Toms, Hendersonville, N. C., for defendants.

fering any inducement to the Defendant Mitchell to terminate his contract with the Plaintiffs or to employ his services.

The matter was tried by the Court without a jury at the January 1976 Term in Asheville, and after full consideration of evidence, the arguments of counsel, and the briefs, the Court now enters its findings and conclusions.

The Plaintiffs, Jack H. Potts and H. Paul Averette, Jr., are duly licensed and practicing attorneys at law in Brevard, North Carolina, and are doing business under the firm name of Hamlin, Potts and Averette, and are resident citizens of North Carolina. The Defendant Ellis S. Rubin is a duly licensed and practicing attorney and resident citizen of the State of Florida. The Defendant Harold Eugene Mitchell formerly resided in Brevard, North Carolina, but sometime prior to the execution of the contract in question, he and his family moved to Homestead, Florida, and at the time this action was instituted he was a resident citizen of the State of Florida. The Defendant Canal Insurance Company is a foreign corporation.

On April 2, 1975, the Defendant Mitchell's wife and three children were killed in an automobile-truck collision near Tifton, Georgia. A fourth child was seriously injured and hospitalized in Albany, Georgia. Funeral services and interment were conducted in Brevard, North Carolina, on April 5, 1975. The day following the funeral services Mitchell discussed his legal rights and remedies with the Plaintiff Jack H. Potts in Brevard, and on April 7, 1975 signed a contingent fee contract with the Plaintiffs' law firm whereby the Plaintiffs agreed to represent the defendant Mitchell in the wrongful death and personal injury actions growing out of the accident. The agreed fee was "25% of any recovery if settled without litigation." Although the evidence shows that the Defendant Mitchell was upset and apprehensive at the time of the signing of the contract, it is clear that he possessed the presence of mind necessary to execute a binding contract. The evidence establishes that he entered into this contract freely and voluntarily, and that no undue pressure or influence was used to obtain his signature.

As a result of this contract, Plaintiffs Potts and Averette accompanied the Defendant Mitchell to Georgia on April 8th in order to investigate the accident and to talk with Susan Mitchell, the surviving fourth child. During their stay in Georgia from April 8th to April 11th, the Plaintiffs made initial contact with Canal Insurance Company, the liability insurance carrier for the owner and operator of the truck involved in the collision. After completing their investigation in Georgia, Potts, Averette and Mitchell returned to Brevard on April 11, 1975 and sometime thereafter the Defendant Mitchell returned to his home in Florida.

After his return to Florida, Mitchell met with the Defendant Rubin on April 14, 1975. The evidence shows that this meeting was arranged by Earl Mitchell, a brother of the Defendant Mitchell. Mitchell expressed to Rubin some concern over the contract he had signed with the Plaintiffs and sought Rubin's advice as to whether or not he was bound by the contract. Rubin, relying upon the case of *610 Lincoln Road, Inc. v. Kelner*, 289 So.2d 12 (Fla.App.1974), informed Mitchell that he could release the Plaintiffs as his counsel with or without cause. The Defendant Mitchell thereupon entered into a contingent fee agreement with Rubin in which Rubin would be compensated to the extent of 25% of the amount recovered as damages and in which Rubin agreed to compensate the Plaintiffs for the work they had performed in connection with the claims and lawsuits. The Defendant Rubin then prepared a letter which Mitchell signed, notifying the Plaintiffs that their services were terminated, and Rubin advised the Plaintiffs by letter dated April 15, 1975 that he was representing Mitchell and that the Plaintiffs would be compensated for services rendered prior to their discharge.

Shortly thereafter, a settlement meeting, which had been arranged initially by

Potts before his discharge, was held in Atlanta, Georgia, with representatives of Canal Insurance Company. Potts attended this meeting but was orally informed by the Defendant Mitchell that Rubin was now representing his interests. Potts thereafter took no active part in the negotiations which resulted in a $160,000.00 settlement from which a contingent fee of $40,000.00 is now due. The Plaintiffs instituted this action on June 11, 1975 against Mitchell and Rubin seeking to recover the $40,000.00 contingent fee which they contend to be due under their contract, and in addition seek to recover actual and punitive damages from Rubin for his alleged wrongful interference with their contract. They seek to enjoin Canal Insurance Company from paying the settlement amount until this controversy is determined. By a Consent Order entered by this Court on November 21, 1975, the Defendant Canal Insurance Company agreed to withhold the sum of $40,000.00 which represents 25% of the settlement effected with the Defendant Mitchell, until further orders of this Court.

■ In considering the legal claims presented the Court will first address the question of whether Defendant Rubin wrongfully interfered with the Plaintiffs' contract. In order to prevail on such a claim the North Carolina Supreme Court has held that a plaintiff must show (1) that a contract existed between the plaintiff and a third party; (2) that the defendant had knowledge of this contract; (3) that the defendant *intentionally induced* the third person not to perform this contract with the plaintiff; (4) that the defendant acted without justification; (5) that the plaintiff suffered actual damages because of the defendant's actions (Emphasis added.) *Childress v. Abeles*, 240 N.C. 667, 84 S.E.2d 176 (1954).

■ In measuring the case at bar against these criteria, it is clear that no evidence of "intentional inducement" has been presented. All of the evidence indicates that the meeting between Mitchell and Rubin was initiated by Defend-ant Mitchell. The evidence shows that Earl Mitchell, brother of the Defendant Mitchell, contacted Rubin and arranged the meeting so that the automobile accident and the possibility of legal representation could be discussed. The evidence further shows that the Defendant Mitchell was predisposed to discharging his North Carolina counsel and retain counsel in the State of Florida. When the Mitchell brothers entered Rubin's law office they presented him with a proposition of law as to whether or not the Defendant Mitchell was bound by the contract which he signed with the Plaintiffs in North Carolina. Rubin advised the Defendant Mitchell that he could discharge his North Carolina attorneys and the evidence indicates that Mitchell answered that he desired to do so. Rubin thereupon prepared the letters dismissing the Plaintiffs and then entered into an employment contract with the Defendant Mitchell. Without regard to the legal ethics question involved here, this Court finds that the evidence is not sufficient to establish "intentional inducement" on the part of Rubin to interfere with the Plaintiffs' contract with Mitchell. The Court further finds that the evidence is not sufficient to establish any basis for exemplary damages against the defendant Rubin.

■ As to the final question, it is clear that the attorney-client relationship may always be terminated by the client with or without cause. 7 C.J.S. Attorney and Client § 109. However, the question then arises as to what compensation the attorney is entitled to receive after such a premature termination.

The Plaintiffs contend that the case of *Casket Co. v. Wheeler*, 182 N.C. 459, 109 S.E. 378 (1921) is controlling and compels a finding that the Plaintiffs are entitled to the value of their contract less the *quantum meruit* of the Defendant Rubin. Also citing *Higgins v. Beaty*, 242 N.C. 479, 88 S.E.2d 80 (1955) and *Rock v. Ballou*, 286 N.C. 99, 209 S.E.2d 476 (1974). The Plaintiffs acknowledge that the *Casket Co.* case is factually distin-

guishable in that the attorney there had fully performed and was trying to collect from a reluctant client, whereas in the present case the Plaintiffs were prevented from full performance by Defendant Mitchell's act of discharge. Nevertheless, the Plaintiffs contend that the rationale of *Casket Co.* is applicable to the case at bar and stands for the proposition that the contract constituted an equitable assignment of the judgment *pro tanto* and vested the Plaintiffs with an equitable lien attaching to any ensuing judgment. Since the Plaintiffs' contract is prior in time to that of Defendant Rubin's, it is their contention that the equitable principle of "first in time, first in right" controls and entitles them to the full value of their contract.

On the other hand, the Defendants contend that the factual difference noted by the Plaintiffs prevents the *Casket Co.* case from controlling the question now before the Court, and, since no North Carolina cases are readily on point, the Court should look to the law of other jurisdictions. Taking this position the Defendants contend that the rule in other jurisdictions would allow the Plaintiffs recovery on only a *quantum meruit* basis. Citing *610 Lincoln Road, Inc. v. Kelner, supra; People v. Radinsky,* 182 Colo. 259, 512 P.2d 627 (1973); *Ramey v. Graves,* 112 Wash. 88, 191 P. 801 (1920), and others.

After a careful examination of the cited authority the Court is of the opinion that there is indeed no North Carolina case which deals specifically with this question. Therefore, the Court has looked to the law of other jurisdictions for guidance and has reached the conclusion that the Plaintiffs are entitled to recover only a reasonable fee for the services actually rendered.

■ The logic of the *Casket Company* case is founded upon sound legal principles, and is not questioned by this Court. However, the factual distinction noted by the Plaintiffs prevents the application of the *Casket Company* rule to this case. It is true that the cases are similar in that the making of the contract consti-

tuted an equitable assignment of the judgment *pro tanto*. However, contrary to the Plaintiffs' contention, this equitable interest could not become "vested" in a contingent fee situation until the case was prosecuted to a favorable judgment or settled by the contracting attorney. Such a judgment had been achieved in the *Casket Company* case. Similarly, the *Beaty* and *Ballou* cases upon which the Plaintiffs rely involved either a contract for a specified fee or a contingent fee contract which had been prosecuted to judgment. The case at bar is clearly outside the holdings of these cases since the Plaintiffs were discharged before any legal proceeding was instituted or any settlement completed. Therefore, it appears to the Court that the Plaintiffs are not entitled to recover the full value of their contract, and should be allowed to recover only a reasonable fee for the services which they rendered. In determining reasonable compensation for the Plaintiffs' services, the value of the contract and the ultimate results should not be ignored in fixing the reasonable value of such services.

It should be noted that a similar analysis has been taken in other jurisdictions. On Page 1029 of 7 C.J.S. Attorney and Client § 169, the following language appears:

"*Contingent fee contract.* Where the compensation of an attorney is to be paid to him contingently on the successful prosecution of the suit, the measure of the attorney's recovery on his discharge by the client before the happening of the contingency is not the contingent fee agreed on, but a reasonable compensation for the services actually rendered; but the contract and the ultimate result should not be ignored in fixing the reasonable value of the services, . . .

"(W)here the attorneys are discharged after judgment and pending appeal therefrom, it has been said that they have the option, either to treat the contract as rescinded and sue for the reasonable value for the services, or to treat the cause of action as liquidated

by its reduction to judgment, subject to the results of the appeal."

 In applying these principles to the facts at hand, it appears to the Court that the services which the Plaintiffs rendered were substantial. Although the Plaintiffs were employed for only a short time, the evidence shows that the bulk of their efforts was devoted to this one case. Furthermore, the testimony reveals that the Plaintiffs were the first to contact the insurance carrier and arrange the meeting in Atlanta. This meeting was apparently a major step in the direction of settlement. The evidence discloses that these claims were settled shortly after the meeting in Atlanta and that neither the Plaintiffs nor the Defendant Rubin spent any appreciable amount of time working on these matters. However, the evidence did disclose that Rubin has employed an attorney in Georgia and that some court proceedings will be necessary for the approval of the payment to Mitchell's fourth daughter, who is a minor. Therefore, giving due regard to the services rendered by the Plaintiffs, the amount of the final settlement, and the overall value of the Plaintiffs' contract with the Defendant Mitchell, the Court concludes that the Plaintiffs should have and recover of the Defendant Mitchell the sum of $15,000.00 as compensation for their services, and that said sum should be paid by the Defendant Canal Insurance Company from the funds withheld by said Insurance Company in compliance with this Court's Order of November 21, 1975. The Court further concludes that the evidence is not sufficient to establish wrongful interference with the contract by the Defendant Ellis S. Rubin, and that the action against him should be dismissed.

A judgment in accordance with these findings and conclusions will be entered simultaneously herewith.